**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Umberto PITINO,
Defendant–Appellant. (Two Cases)**

**Nos. 89–5008, 89–5009.**

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1989.
Decided Oct. 3, 1989.

increased because the government's brief clearly recited the record reference to show that many statements in the appellant's brief are untrue, but appellant's counsel filed a reply brief that did not in any way attempt to explain the "factual statements" appearing in their brief. However, when questioned during oral argument, Attorney Martin made no effort to explain these contradictions or deny the obvious misstatements. By separate order we will require that Attorney Robert P. Martin and L. Samuel Dockery, III show cause as to why they should not be sanctioned for their conduct.

Robert Paul Martin (Arthur T. Ciccarello, Lewis, Ciccarello & Friedberg, Charleston, W.Va., L. Samuel Dockery, III, on brief), for defendant-appellant.

Robert Holt Edmunds, Jr., U.S. Atty., Greensboro, N.C., for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and CHAPMAN, Circuit Judges.

PER CURIAM:

The only issue presented by appellant is whether the district judge abused his discretion in refusing to allow appellant Umberto Pitino to withdraw his plea of guilty to a charge of conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. § 846. Appellant has failed to show that he did not understand the full effect of his plea or that his plea was not voluntarily and knowingly entered. The record convinces us that Pitino's rights were meticulously protected and that his original attorney, the prosecutor, and the district judge did more than was required to protect him in every way. The district judge did not abuse his discretion in refusing to allow Pitino to withdraw his plea.

What causes us grave concern are the actions of the Pitino's appellate counsel. In their brief and in oral argument they have convinced us that they have either not read the record or that they have deliberately misstated the facts. Our concern is

I.

Pitino was arrested on March 31, 1988 on a warrant charging him with conspiring to distribute heroin in violation of 21 U.S.C. § 846. He was thereafter indicted for conspiring to possess heroin with intent to distribute, conspiring to distribute heroin and possession of 1,195 grams of heroin. Seven other individuals were named in the indictment. Shortly thereafter Pitino employed Barry Stanback as his attorney, and Pitino, through his sister, employed Margo Bender as a translator because he did not understand English. He spoke Italian and also a Sicilian dialect.

On May 19, 1988 Pitino was indicted in the Southern District of Texas on charges of distributing heroin and with the illegal use of a communication facility.

Prior to the date set for trial, Attorney Stanback filed 15 motions on behalf of his client, discussed the case at length with his client and with the attorneys representing the codefendants. Discovery was extensive. During this time the visitor's log at the jail reflects that Stanback visited his client 17 times. As the attorney studied the various tape recordings and video recordings made available by the government, he began to appreciate the force of the government's evidence. In one video recording, Pitino and an associate met with two undercover investigators in a hotel room. They provided a one gram sample of heroin to the undercover investigators, but this was refused because of its poor

quality. The tape then showed Pitino discussing with the investigators the possibility of acquiring heroin overseas. These videos were viewed by the translator, Margo Bender, who translated all of the Italian statements made but could not translate certain statements in the Sicilian dialect. Attorney Stanback took transcripts of the video tape to the jail and discussed them with Pitino.

As the evidence against Pitino began to increase and to reveal itself through discovery, Attorney Stanback determined that Pitino might be best served through a plea of guilty to less than all of the counts in the indictment. The Texas indictment had come down and there was a chance of disposing of all charges in one plea. The prosecutor had set a deadline for guilty pleas and this deadline was extended, at Attorney Stanback's request, for three days. This was until the close of business on Friday, August 12, 1988, before the term of court began on Monday. When a guilty plea was first discussed, Pitino insisted that the terms be reduced to writing. On August 11, 1988, Attorney Stanback obtained a written plea proposal from the prosecutor and took this proposal to the jail with the interpreter and thoroughly discussed it with Pitino. This proposal envisioned an active sentence not to exceed 141 months. However, appellant declined this proposal and the deadline for plea agreements expired. On Saturday, August 13, Attorney Stanback returned to the jail to continue trial preparation, and Pitino asked if he could still enter a plea. Stanback advised that a plea might still be possible but it would probably have to be to both Counts 1 and 6 in the indictment, and that Count 6 carried a minimum mandatory jail term of ten years. Pitino asked him to try to reopen negotiations. Attorney Stanback contacted the United States Attorney, who proposed a plea of guilty to Count 1, the conspiracy count, in the North Carolina indictment, and Count 1 of the Texas indictment. There would be no recommended cap on an active sentence in the new agreement. This proposal was discussed by Attorney Stanback with appellant using Mrs. Bender as interpreter. The attorney pointed out that although the proposed agreement had no cap on an active sentence, Count 6 of the North Carolina indictment would be dismissed. Pitino agreed to this plea bargain and Attorney Stanback went to the United States Attorney's office and the new agreement was typed by the United States Attorney, since no secretaries were available on Saturday afternoon.

On Monday, August 15, 1988, Pitino appeared before the Honorable Hiram H. Ward and the court conducted an exhaustive Rule 11 proceeding in which he extensively questioned both Pitino and Attorney Stanback. During these proceedings Pitino acknowledged that he had discussed the case in detail with his attorney, that he understood the charges against him, that he and his attorney had gone over the possible defenses, that he was satisfied with the services of his attorney, that he understood the maximum possible penalties as explained by the court, that he had the right to go to trial with all the protections afforded an accused, that he had not been threatened or promised anything to change his plea, that he was aware of the conditions of the plea agreement and had gone over these with his attorney and approved of the agreement, and he asked the court to accept his plea. He stated that he was aware that he could not withdraw the plea after it was accepted if the sentence was more than he expected.

Judge Ward found that the plea was voluntarily and intelligently made with an understanding of the charges and the consequences accompanying the plea. Judge Ward stated that he watched Pitino carefully during the Rule 11 proceeding, and he noted that the attorney did not tell Pitino what to say in response to any of the court's questions. After the court accepted Pitino's plea, it immediately went into the trial of two of his codefendants.

A change of plea hearing was set for August 31, 1988 in connection with the Texas indictment which had been transferred to the Middle District of North Carolina under Federal Rule of Criminal Procedure 20. At that time, on oral motion, Attorney L. Samuel Dockery was substituted for At-

torney Stanback as Pitino's attorney of record and a motion to withdraw his plea of guilty to the North Carolina indictment was filed. This motion claimed that Attorney Stanback had misled the defendant and that the translator, Bender, improperly gave appellant legal advice. A hearing was conducted and Attorney Stanback and Mrs. Bender both testified. Mr. Stanback denied misleading appellant in any way and Mrs. Bender denied giving any legal advice. At the conclusion of this hearing, Judge Ward found:

I have listened with a great deal of interest to the evidence in this case. At the very outset, let me say that I find the testimony of Barry Stanback credible, reliable, keeping with the traditions of the profession. It seems to me that he did all that any lawyer could be expected to do in seeing that his client's case was fully investigated and that the client was advised of the evidence against him.

He also made it clear to him that the final choice was his, his alone; he was there to advise him, not to dictate to him. And it was after continued negotiations that this plea agreement came into being. I also find credible the testimony of Margo Bender; and I am satisfied beyond a reasonable doubt that she did not coerce him or intimidate him, nor induce him into entering a plea. She did what any layman would do. "I'm not a lawyer, you must rely upon the advice of your lawyer."

When the defendant asked her about Stanback, she gave her opinion of Stanback as a lawyer, and I assume that things of that nature occur everyday. But more importantly, gentlemen, on the morning of August 15 we had a jury here and ready to go to trial; and the defendant, prior to jury selection, entered a plea of guilty. I very carefully conducted a full Rule 11 inquiry of the defendant. I did so slowly so that the interpreter had all of the time in the world she needed to translate to him my questions. And if it was a long question, as I recall, I broke it up—a long explanation or a question, I broke it up so that she

would have adequate time to fully explain to him.

His answers were unequivocal.

I explained to him the maximum penalties that he faced. I also explained to him that no one, not even the court, would know where in the guidelines his sentence would fall until after the presentence report had been completed and had been divulged to him, his counsel, and the United States Attorney of any corrections of any factual information contained therein; and that both sides would have a right to question the factual information in that report.

The court refused to allow the appellant to withdraw his plea and found that he had shown no fair or just reason for withdrawal. The court further found that the government would be prejudiced in having to try the appellant, after having conducted a long trial of his two codefendants, and after having sent witnesses back to "Texas, New York, and elsewhere across the nation."

The following day, September 1, 1988, Pitino again appeared before the court and this time entered a plea of guilty to Count 1 of the Texas indictment which involved the video taped transaction in a Houston, Texas hotel with two undercover investigators which has previously been mentioned. After a full Rule 11 examination, this plea of guilty was accepted and a presentence report ordered.

On November 14, 1988, appellant filed another motion to withdraw his guilty plea, claiming that Mrs. Bender could not adequately translate the Sicilian dialect spoken by Pitino and that Attorney Stanback had provided inadequate counsel. A hearing was set for November 22, 1988 and extensive testimony was taken. The court found that appellant's repudiation of his prior sworn testimony did not ring true. The court stated: "Judging credibility of the witnesses in this case, I think that my decision on August 31 was the correct one and I reaffirm that decision and conclusion. The motion to withdraw the plea is denied." On December 2, 1988 when the matter was set for sentencing, Attorney Dockery, for

the first time mentioned to the court that he had learned of exculpatory evidence in tape recordings made during the investigation and that these tapes were made available to Attorney Stanback at a very early stage in the proceedings and declined. Mr. Dockery stated that his information came from Attorney Walter Johnson, who had represented one of the codefendants. The trial judge expressed his concern that Attorney Dockery would make this claim without having discussed the matter with Mr. Stanback. The court questioned the United States Attorney who stated that there was no exculpatory material in the tapes and that all "Brady" material had been delivered to the defense. The court took a short recess during which the judge called Attorney Walter Johnson and discussed the tapes with him. The court then returned to the bench and advised that Mr. Johnson had told him that the tape recordings had been useful to him in evaluating the case against his own client, but he did not know if they contained any evidence exculpatory to appellant. Mr. Johnson did advise that Attorney Stanback had listened to the tapes and had read numerous transcripts thereof over a considerable period of time.

The court granted Mr. Dockery 12 days to fully review the tapes for the exculpatory evidence that Dockery claimed they would reveal. The sentencing date was continued until December 14, 1988, and when court reconvened on that date Attorney Dockery made no further mention of the claim of exculpatory evidence.

After hearing evidence in mitigation, the court made findings and imposed a sentence of 264 months to be followed by supervised release of five years on the North Carolina indictment and ten years concurrent on the Texas indictment.

In due time the appellant entered notice of appeal and appeared in this court represented by Robert P. Martin of Charleston, West Virginia.

## II.

Appellant claims error by the district court in refusing to grant his motion to withdraw his plea. Under Federal Rule of Criminal Procedure 32(d) it is provided: "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."

In *United States v. Haley,* 784 F.2d 1218 (4th Cir.1986), we held that this rule places upon the defendant the burden of showing a fair and just reason for withdrawal of his plea and that the action by the district judge upon such motion is reviewed upon appeal under an abuse of discretion standard. We have carefully reviewed the action of the district court in the present case, and we find no merit to the appellant's claim. We are disturbed by the continued assertion by appellant's attorney of what he refers to as "relevant facts," when most of these factual issues have been decided against him by overwhelming evidence.

Appellant's brief states:

The following are the relevant facts upon which Appellant relies in support of the issues presented for review:

1. Appellant was not and is not a United States citizen;

2. Appellant was arrested and charged with very serious and complicated violations of federal law;

3. The plea agreement had a large blank space within its text;

4. The plea agreement was alleged to have been changed via a telephone conversation between defense counsel and counsel for the government on a Saturday afternoon;

5. Appellant was incarcerated throughout all critical stages herein;

6. Appellant speaks no English. Appellant understands and is somewhat conversant in Italian and speaks the "Sicilian Dialect";

7. Appellant's counsel misled him and his family to the seriousness of the charges against him;

8. Appellant was misled and misinformed as to the consequences of a plea;

9. Appellant's counsel was unprepared for trial two days prior to the onset of the proposed trial;

10. Appellant's counsel had not discussed or even shown the appellant the Texas indictment prior to his execution of the plea agreement;

11. There existed exculpatory evidence which Appellant's counsel had not disclosed.

12. Appellant's counsel never reviewed any evidence with Appellant prior to his plea;

13. Appellant had refused an agreement with a twelve (12) year "cap" and the next day executed a plea agreement with no "cap" and life exposure;

14. Appellant's counsel had no federal criminal trial experience;

15. Appellant became so confused and upset during the critical stages of August 11th and August 15th he was not able to voluntarily, knowingly, intelligently and understandingly enter into a plea agreement; and

16. The Appellant at all times vigorously maintained his innocence.

Except for the statement that the appellant was not and is not a United States citizen, was arrested and charged with a very serious violation of federal law, and was incarcerated throughout all critical stages, the above statement of facts have each been explained in such a way that they are not relevant to the issue of whether the district judge abused his discretion, or they have been contradicted by overwhelming evidence and by specific findings of fact by the district court which are not clearly erroneous.

The blank space in the plea agreement was the result of the United States Attorney attempting to type the agreement on a Saturday afternoon when no secretary was available. Appellant has produced no evidence to show that this blank space had any effect upon the understanding of the terms of the plea agreement or upon his voluntariness in entering his plea of guilty. There has been no indication that something was omitted from the plea agreement that he thought would be there, or that he

has been prejudiced in any way by the blank space. The plea agreement was not changed by a telephone conversation between defense counsel and the United States Attorney on a Saturday afternoon, but negotiations in an effort to work out a plea agreement were rekindled on a Saturday afternoon at the request of the appellant after the deadline for guilty pleas had passed. The fact that defense counsel was consulting with appellant on Saturday afternoon and was able to reopen plea negotiations is evidence of the more than adequate services this attorney performed.

The evidence is overwhelming that appellant understood Italian, spoke Italian with the interpreter and never sought the services of an interpreter who understood his "Sicilian dialect."

The present claim that his counsel misled him and his family as to the seriousness of the charges against him is nothing more than a bald assertion which is contradicted by the overwhelming evidence and the findings of fact by the district judge, as well as the answers given by the appellant at the Rule 11 hearing.

There is no truth to the appellant's claim that he was misled or misinformed as to the consequences of his plea. The transcript of the Rule 11 proceeding is to the contrary and the district judge at the hearings on the motion to withdraw the plea explained the great care that he had taken to be sure that appellant understood the consequences of his plea.

Appellant's claim that his attorney was unprepared for trial two days prior to the trial date is unsupported. The district court found, and the record shows, that Attorney Stanback had filed 15 pretrial motions, had made 17 visits to appellant in jail, had met on numerous occasions and reviewed discovery material with attorneys for the codefendants and with attorneys of the United States Attorney's office and was well prepared.

Appellant claims that his attorney had not discussed or shown him the Texas indictment prior to his execution of the plea agreement. The Texas indictment had not

arrived in North Carolina prior to the execution of the agreement, but the plea agreement itself mentions the disposition of the Texas indictment and the testimony shows that it was discussed with appellant.

Attorney Dockery was given 12 days to produce the exculpatory evidence that he claimed existed and which he claimed appellant's original attorney had declined to review. These 12 days produced nothing, not even an explanation by Attorney Dockery of what he had or had not found, nor an expression of appreciation to the court for its indulgence, nor an apology to Attorney Stanback for the allegation which was totally unfounded.

There is nothing to support the claim that Attorney Stanback did not review evidence with appellant prior to his plea. All of the evidence points in the other direction and the district court found as a fact that the case had been fully investigated and that appellant had been advised of the evidence against him.

Appellant did refuse the original plea agreement which had a 12 year "cap," but it was at his insistence that plea negotiations be reinstituted even after he knew the 12 year "cap" was no longer available. The trial judge found that he completely understood the terms of the plea agreement and the consequences of his plea.

It is technically true that Attorney Stanback had no federal criminal trial experience, but the record reflects that he had been a law clerk to a United States District Judge for two years, that he had represented more than 30 criminal defendants, and that he had tried state criminal cases and federal civil cases. Appellant does not show how he was prejudiced by the fact that his attorney had not tried a federal criminal case nor has he shown the findings of the district judge to be clearly erroneous when he concluded that Stanback had done a good job in representing Pitino.

There is little to support appellant's claim that he was so confused and upset at critical stages on August 11 and August 15 that he did not voluntarily and intelligently enter into the plea agreement. The most

critical stage was during his appearance before the district judge in the Rule 11 proceeding and there he demonstrated to the satisfaction of the court that he did understand the nature of the charges, the consequences of his plea and that the plea was made intelligently, knowingly and voluntarily.

The record also reflects that appellant met with his wife, his two brothers, an interpreter, and a friend from New York at the jail after he refused the first plea agreement and before he signed the final plea agreement. Attorney Dockery was with the Pitino family during a portion of this jail visit.

The appellant's claim that he has at all times vigorously maintained his innocence is contradicted by his own sworn testimony before the district court at the Rule 11 proceeding.

Pitino's appellate counsel in his brief states:

"At the conclusion of the evidence before the trial Court on August 31, 1988, the Court denied the Appellant's motion [motion to withdraw his plea]. The court cited for its reasons therefor, the knowledge of the Court of the trials of the Appellant's co-defendants and the evidence presented therein which the Court felt implicated Appellant and the prejudice to the government since the government had already returned a witness to the State of Texas."

This statement causes us grave concern because at J.A. 194 the trial judge states:

Let me make it abundantly clear for the record that in reaching my decision on the motion to withdraw the plea, I did not rely upon the evidence that I heard in the trial of the two co-defendants. I relied upon the evidence I heard here today. I simply added that at the end as my opinion of the strength of the government's case against the defendant and for the purpose of illustrating what a fine job I think Mr. Stanback did in working out the original plea agreement.

■ The court also found that the government would be prejudiced by a with-

drawal of Pitino's plea because it had already sent witnesses back to "Texas, New York, and elsewhere across the nation." Under *Haley*, 784 F.2d at 1219, there is no requirement that the prosecution show prejudice by reliance upon the defendant's plea, until the defendant has shown a fair and just reason to withdraw his plea. No such showing has been made in the present case.

Since we find no abuse of discretion by the district court in denying the motion to withdraw the plea, the judgment of the district court is affirmed.

AFFIRMED.