941 F.2d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Burrell Vann MOORE, Sr., Defendant-Appellant.
 No. 90-5062.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1991.
Decided Aug. 23, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Terrence W. Boyle, District Judge. (CR-89-28-4)
 Edwin Chrisco Walker, Assistant Federal Public Defender, Raleigh, N.C. (Argued), for appellant; William E. Martin, Federal Public Defender, Raleigh, N.C., on brief.
 Thomas Michael Gannon, United States Department of Justice, Washington, D.C. (Argued), for appellee; Sidney Glazer, Criminal Division, United States Department of Justice, Washington, D.C., Margaret Person Currin, United States Attorney, Robert E. Skiver, Assistant United States Attorney, Raleigh, N.C., on brief.
 E.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and JOHN C. GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Burrell Vann Moore ("Moore") appeals a decision of the District Court for the Eastern District of North Carolina denying his motion to withdraw a plea of guilty. Finding no abuse of discretion, we affirm.
 
 I.
 
 2
 The appellant, Burrell Vann Moore, was indicted on August 8, 1989, on four charges: (1) possession with intent to distribute 5.3 grams of cocaine base, 21 U.S.C. § 841(a)(1) & (b)(1)(B); (2) possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1) & (b)(1)(C); (3) maintaining a place for the purpose of distributing cocaine base and heroin, 21 U.S.C. § 856(a)(1); and (4) use of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1).
 
 
 3
 On the date set for trial, Moore entered into a plea agreement with the United States. Under the agreement, Moore pleaded guilty to counts one and four of the indictment. Moore also promised to render "substantial assistance" to the Government in its investigations of crimes of which Moore had knowledge. In return, the Government agreed to drop counts two and three of the indictment. The Government further promised, among other things, to make known to the court at sentencing the nature of Moore's cooperation, including whether he had substantially assisted. The agreement stated that count one carried a sentence of ten years to life imprisonment, and count four carried a five-year sentence, consecutive to any other sentence. Moore's court-appointed attorney, William Shell, told Moore that, if he substantially assisted, there was a possibility that he would receive a sentence of only eight years. This possibility of a sentence less than the statutory minimum was not set forth in the plea agreement.
 
 
 4
 The district court conducted a Rule 11 hearing, confirming with Moore that he understood that he was waiving constitutional rights by entering the plea agreement. In reviewing with Moore the counts of the indictment, the court stated that the penalty for a conviction under count one, possession of cocaine base with intent to distribute, was "as much as ten years to life in prison"; the court said that count four, using a firearm in connection with a drug trafficking crime, carried a sentence of "five years consecutive to any other prison sentences." The court also asked Moore whether he understood the terms of the plea agreement, specifically pointing out that the Government was not obligated to make a sentence recommendation. Moore said that he understood all these things. The court asked whether there had been any other promises made that were not incorporated into the written plea agreement, and Moore said that there were not. Finally, the court asked whether Moore was satisfied with the work done on his behalf by court-appointed counsel, and Moore replied, "Very much so." Satisfied that Moore had entered into the plea agreement voluntarily, knowingly, and intelligently, the court accepted Moore's pleas of guilty to counts one and four of the indictment and scheduled a sentencing hearing.
 
 
 5
 During the time preceding the sentencing hearing, the Assistant United States Attorney contacted Moore's attorney, Shell, informing him that Moore was not providing substantial assistance to the Government. On March 5, 1990, Shell wrote Moore, stating, "I cannot over emphasize to you the importance of this, because right now the United States does not intend to make a motion for substantial assistance because you have not provided any, and therefore you can expect to be sentenced by Judge Boyle to 15 years in Federal Prison." Subsequently, Shell received a letter, dated March 20, 1990, from the Assistant United States Attorney handling the case. The letter informed Shell that Moore had still "failed to lend any assistance whatsoever," reiterated that the Government would not make a motion at sentencing unless Moore cooperated, and offered the opinion that "Moore is intractable and apparently does not wish to avail himself of any possible substantial assistance motion."
 
 
 6
 Shell wrote to Moore again, enclosing the letter from the United States Attorney. Shell told Moore in the letter that "these people really had wanted to help you out to get your sentence reduced, but you have to help them. I think it may now be too late.... I anticipate that you will be sentenced to a term of imprisonment of 15 years." Shell wrote similar letters to Moore on April 3, April 20, and May 7, 1990. Despite these warnings, Moore never rendered to the Government the promised assistance.
 
 
 7
 On May 14, 1990, Moore appeared for sentencing. The court stated that the mandatory minimum sentence would be fifteen years' imprisonment. The prosecutor then stated that the Government was not going to make a substantial assistance motion. When the Court asked Moore if he wanted to speak, Moore said that he did and told the court "I don't understand all of this.... I didn't know nothing about no 15 years.... [Shell] just told me eight years." According to Moore, Shell had said that, under the plea agreement, Moore was to get a maximum sentence of eight years imprisonment, with a possibility of only five years if he substantially assisted. Moore also told the court that his testimony at the Rule 11 hearing had not been truthful, that he had said only the things his lawyer had coached him to say. Noting that Moore had called into question the effectiveness of his attorney and the voluntariness of his plea, the court suggested that Shell withdraw, that another attorney be appointed to represent Moore, and that an evidentiary hearing be held on whether the guilty plea should be set aside.
 
 
 8
 At the subsequent evidentiary hearing, Moore moved to withdraw his guilty plea. Moore argued, as he had at the sentencing hearing, that Shell had misrepresented the terms of the plea agreement. Allegedly, Shell had told Moore that the maximum sentence he would receive was eight years, with the possibility of having it reduced to five years, or even fifty-six months, if Moore provided substantial assistance. The court pointed out, however, that Moore's allegations contradicted his prior testimony, under oath, at the Rule 11 hearing. Specifically, Moore had previously said that he understood that the sentence that could be imposed under count one was ten years to life imprisonment; that the sentence that could be imposed under count four was five years' imprisonment, consecutive to any other sentence; that no promises outside the plea agreement had been made; that he had to "get everything just right in order ... to come out of this with what [he was] expecting"; and that the Government was not promising to make a downward departure.
 
 
 9
 Moore responded by asserting that he had not testified honestly at the Rule 11 hearing, but that he had said only what his lawyer had told him to say. Shell testified and denied this allegation, saying that he had only advised Moore to testify honestly and truthfully. After hearing all the evidence, the court determined that Moore's testimony at the Rule 11 hearing was truthful. The court stated that the record of the Rule 11 hearing showed that Moore "was put under oath and he answered me under oath." Further, the court found "that there isn't any evidence, credible evidence, that he was told to lie." Thus, the district judge said to Moore, "I find that you were telling me the truth on January 2nd, and the truth was that you knew you were facing fifteen years and you could get eight if you helped." Finding that Moore had not satisfied his burden of proof, the court refused to allow Moore to withdraw his guilty plea.
 
 
 10
 Moore appeals.
 
 II.
 
 11
 Rule 32(d) of the Federal Rules of Criminal Procedure provides, "If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." The action of a district judge on a motion to withdraw a plea" is reviewed upon appeal under an abuse of discretion standard." United States v. Pitino, 887 F.2d 42, 46 (4th Cir.1989) (citing United States v. Haley, 784 F.2d 1218 (4th Cir.1986)).
 
 
 12
 Shell admitted telling Moore that he might be able to have his sentence reduced to eight years, but only if he substantially assisted. Moore alleges, however, that Shell promised him an eight-year sentence whether he assisted the Government or not. Citing United States v. Becklean, 598 F.2d 1122 (8th Cir.), cert. denied, 444 U.S. 864 (1979), Moore argues that this alleged promise by Shell justifies withdrawal of the plea. In Becklean, the court held that "[a] defense counsel's mistaken representation to a defendant as to what a prosecutor promised may constitute grounds to vacate the plea ... if the representation played a substantial part in inducing the plea." Id. at 1125. To prevail on the grounds set forth in Becklean, a defendant must first establish the existence of a misrepresentation and, second, reliance on the misrepresentation. Here, the district court held that Moore had failed to produce evidence that his court-appointed attorney had made the alleged misrepresentations.
 
 
 13
 The burden is on the defendant to prove the facts establishing a fair and just reason for withdrawal. Pitino, 887 F.2d at 46. Moore attempted to satisfy that burden here by offering only his own testimony, unsupported by any other evidence. This testimony directly contradicted statements Moore had made at his Rule 11 hearing. The court engaged in the following colloquy with Moore at the Rule 11 hearing:
 
 
 14
 THE COURT: This agreement should set out all of the terms. There should not be anything left on the side except what is in this agreement. Is there anything that isn't in this agreement that you have agreed to?
 
 
 15
 DEFENDANT: No, just that right there.
 
 
 16
 THE COURT: That is the entire agreement between yourself and the Government, is that right?
 
 
 17
 DEFENDANT: Yes, sir.
 
 
 18
 THE COURT: Have you been made any promises other than what you're agreeing to here?
 
 
 19
 DEFENDANT: No, sir.
 
 
 20
 In Crawford v. United States, 519 F.2d 347 (4th Cir.1975), cert. denied, 423 U.S. 1057 (1976), "[W]e adopt[ed] the rule that the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." Id. at 350.
 
 
 21
 Here, Moore did make an allegation challenging his prior testimony. Moore attempted to discredit his Rule 11 testimony by asserting he was only saying what his lawyer had told him to say in response to the court's questions. The district court conducted a full hearing to determine the merits of Moore's allegations. The court heard Moore's testimony as well as testimony from Shell, who said that the only advice he gave Moore was that "he should answer truthfully." After hearing the testimony, the district court found Moore's assertions, that he had been counselled to lie to the court, not to be credible:
 
 
 22
 There isn't any evidence, credible evidence, that he was told to lie. I accept the statements of his lawyer that he told him to answer the Judge's questions.... And if you believe that he told you to lie to the court, I think that's unsupported by the evidence. I think that the evidence is that I asked you the questions, I did my best to put you notice you had to tell me the truth. And if you weren't telling me the truth it wasn't because somebody told you to lie. I think you were telling me the truth.
 
 
 23
 A review of the record shows that Moore offered no evidence to support his testimony that Shell made the misrepresentations claimed. In fact, not only was his testimony unsupported, but it directly contradicted prior testimony made at the Rule 11 hearing. Although Moore alleged that his Rule 11 testimony should be disregarded because Shell told him to lie, Moore failed to offer evidence to support this allegation. Therefore, resolution of the case depended on determining the credibility of Moore's testimony. As we have stated before, "It is not for an appellate court 'to weigh the evidence or to determine the credibility of witnesses.' " United States v. Fisher, 484 F.2d 868, 86970 (4th Cir.1973). We see nothing in the record calling into question the credibility findings here. Thus, we accept the court's finding that Moore failed to prove his lawyer misrepresented the terms of the plea agreement.
 
 III.
 
 24
 Moore argues that even if he failed to prove misrepresentations by his lawyer, his plea was nevertheless made involuntarily and without knowledge because he was confused as to the "intricacies" of substantial assistance. Moore asserts that he believed he would get eight years even if he provided no assistance. There is no credible evidence to support this argument. Moore knew, both from the Rule 11 colloquy and the four corners of the plea agreement, that his sentence was to be fifteen years unless he provided substantial assistance. Further, both Moore's lawyer and the court explained to Moore the substantial assistance provisions of the agreement. In fact, Government agents and police officers met with Moore shortly after he entered his plea and explained what Moore needed to do to provide "substantial assistance."
 
 
 25
 In light of the numerous explanations, Moore can not claim that he was not told what substantial assistance entailed. Any assertion that he did not understand the explanations also lacks credibility. Moore had previously assured the court at the Rule 11 hearing that he did understand the substantial assistance provisions. Although Shell had written Moore five letters explaining that Moore would be subject to a fifteen-year sentence unless he cooperated, Moore never complained that he understood the plea agreement to mean something different. Moore never told anyone that he was confused about substantial assistance being a prerequisite to a sentence lower than fifteen years until the day of the sentencing hearing. These inconsistencies support the district court's conclusion that Moore was not testifying truthfully when he announced his "confusion" at the sentencing hearing. For these reasons, we find no merit to Moore's argument that he was confused about how substantial assistance worked.
 
 IV.
 
 26
 We conclude that the district court did not abuse its discretion in refusing to allow Moore to withdraw his guilty plea. Accordingly, we
 
 
 27
 AFFIRM.