OPINION OF THE COURT
Harold J. Hughes, J.
*509 Defendants move pursuant to CPLR 3211 for an order dismissing the complaint. Plaintiffs cross-move for partial summary judgment. The New York State Right-to-Life Committee, Inc. (Right-to-Life Committee) moves for leave to participate as amicus curiae. The court has considered and now grants the Right-to-Life Committee application for leave to take part. The central legal issue raised in this case of first impression is whether an employee who alleges a retaliatory discharge because of the employee’s exercise of rights under Civil Rights Law § 79-i may pursue a private action against his or her employer.
There is no general tort cause of action for wrongful discharge from employment. The Legislature and courts of New York have refused to enact or recognize a tort of wrongful discharge from employment (Murphy v American Home Prods. Corp., 58 NY2d 293). Our courts have recognized that the Legislature has the authority to create such causes of action and is best suited for crafting a coherent set of remedies (Murphy v American Home Prods. Corp., 58 NY2d, at 297; Sabetay v Sterling Drug, 69 NY2d 329, 335).
There being no common-law tort action for wrongful discharge, it is necessary to consider whether Civil Rights Law § 79-i expressly provides for a private cause of action. The court has considered, but rejects, plaintiffs’ argument that Judge Meyer was of the opinion that Civil Rights Law § 79-i created a tort remedy (Murphy v American Home Prods. Corp., 58 NY2d 293, 308-309, supra [dissenting opn]). Judge Meyer listed instances in which the Legislature protected the rights of employees, but his list is not limited to those with tort remedies.
The statute titled "[discrimination against person who refuses to perform certain act prohibited” declares:
"1. When the performing of an abortion on a human being or assisting thereat is contrary to the conscience or religious beliefs of any person, he may refuse to perform or assist in such abortion by filing a prior written refusal setting forth the reasons therefor with the appropriate and responsible hospital, person, firm, corporation or association, and no such hospital, person, firm, corporation or association shall discriminate against the person so refusing to act.
"A violation of the provisions of this section shall constitute a misdemeanor.
"2. No civil action for negligence or malpractice shall be maintained against a person so refusing to act based on such refusal” (Civil Rights Law § 79-i). *510 Violation of the section constitutes a misdemeanor but this section does not expressly create a private cause of action.
There being no explicit private right of action, the court must determine whether one is implied. Amicus urges that at common law, "upon every statute made for the remedy of any injury, mischief, or grievance, an action lies by the party grieved, either by the express words of the statute or by implication” (Bullard v Bell, 4 Fed Cas 624, 639, case No. 2121). However, it is now well established that a private right of action may only be found " 'if a legislative intent to create such a right of action is "fairly implied” in the statutory provisions and their legislative history’ ” (Carrier v Salvation Army, 88 NY2d 298, 302; Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207; Sheehy v Big Flats Community Day, 73 NY2d 629, 633). The test of whether a private right of action may be implied involves three factors: " '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme’ ” (Carrier v Salvation Army, 88 NY2d 298, 302).
Plaintiffs, as the ones seeking to pursue the private right of action, bear the burden of meeting that test (Gomariz v Foote, Cone & Belding Communications, 228 AD2d 316). In this case, there is no question that plaintiffs meet the first two parts. As employees who have exercised their rights under Civil Rights Law § 79-i and allegedly been discriminated against in retaliation, they are clearly within the group for whom the statute was enacted. The purpose of the legislation is to prohibit the kind of discrimination that plaintiffs have alleged. While the wholesale violation of Civil Rights Law § 79-i envisioned in the Lawson affidavit is speculative, the statute’s purpose would be promoted and such future problems would be curtailed if a private right of action was implied.
The third part is generally the "most critical” (Carrier v Salvation Army, 88 NY2d 298, 302, supra; Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., supra, 76 NY2d, at 212). In explicating the method for analyzing the "legislative scheme”, the courts first analyze the Legislature’s express intent. Plaintiffs urge that the June 17, 1971 memorandum of Robert D. Stone, contained in the Bill Jacket for Civil Rights Law § 79-i (L 1971, ch 1098), demonstrates an intent to provide a private cause of action. However, there is no reasonable basis *511 for equating Mr. Stone’s expectation that employees would be protected by Civil Rights Law § 79-i with those employees having a private right of action. To the contrary, the Stone memorandum as well as the other memoranda not only recognize that the criminal penalty is the sole means of enforcing the prohibition on discrimination, but fail to suggest that any stronger protections are needed. Indeed, Mr. Stone declared that the statute permitted employees to act "without fear of a loss of employment.” (Mem of Robert D. Stone, Bill Jacket, L 1971, ch 1098.) Even if criminal prosecution were no longer a deterrent, as suggested by the Lawson affidavit, the court is not thereby justified in attempting to relegislate. The absence of explicit legislative intent distinguishes this case from cases in which the private right of action was expressed by the Legislature and upheld by the courts (Doe v Roe, 190 AD2d 463, 471).
In the absence of express legislative intent supporting a claimed private right of action, courts respectfully scrutinize the statute to determine whether plaintiffs have demonstrated that a private cause of action is consistent with both the "enforcement means” chosen by the Legislature and the "basic purposes underlying” Civil Rights Law § 79-i (Carrier v Salvation Army, supra, 88 NY2d, at 302). Deferential attention to the legislative creation is required because the " 'Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature’ ” (Carrier v Salvation Army, 88 NY2d, at 303-304 [emphasis supplied by Court of Appeals]; Sheehy v Big Flats Community Day, supra, 73 NY2d, at 634-635). Plaintiffs’ reliance on Henry v Isaac (214 AD2d 188) to support ignoring the legislative enforcement mechanism is unavailing. Henry was rendered prior to the Court of Appeals determination in Carrier v Salvation Army (88 NY2d 298), is clearly at odds with the Court of Appeal’s application of the test to the same statute and was criticized by the Court of Appeals (at 304). The well-established rule is that consistency with the Legislature’s scheme includes "consistency with this enforcement mechanism” (CPC Intl. v McKesson Corp., 70 NY2d 268, 277; Theodoreu v U.S. Cablevision Corp., 192 AD2d 847, 848; Gain v Eastern Reinforcing Serv., 193 AD2d 255, 258).
In considering the legislative scheme, the courts consider the common-law and statutory context (Carpenter v City of Platts *512 burgh, 105 AD2d 295, 298). Earsing v Nelson (212 AD2d 66, 70-71), cited by amicus, reflects that in cases where there is a common-law history of tort actions against those who have violated the law in question, that may suffice to meet the test. Unlike the common law regarding dispensing dangerous weapons to minors at issue in Earsing, it is evident that causes of action for wrongful discharge are narrowly defined and restricted to very limited circumstances (Murphy v American Home Prods. Corp., 58 NY2d 293, supra). The absence of a common-law tort action for wrongful discharge and our Legislature’s reluctance to open employers to the threat of civil litigation every time they dismiss an employee weigh heavily against a legislative intention to create a private cause of action (Carpenter v City of Plattsburgh, 105 AD2d 295, 298).
Civil Rights Law § 79-i specifies two mechanisms for promoting its goal: criminal prosecution of employers who discriminate and protection of employees from civil litigation. Protection from civil litigation reflects the Legislature’s concern that potential civil litigation, with its significant costs, would have a powerfully coercive impact on employees. The Legislature’s failure to employ civil litigation against employers as a means of enforcing the Legislature’s antidiscrimination goal cannot be accidental. Entrusting the enforcement sword to the objective hands of the criminal prosecutor rather than to employees who could vindicate their statutory rights or use civil litigation to pursue unrelated personal grievances against employers is the "legislative scheme”. The court concludes that conferring a private right of action under Civil Rights Law § 79-i would be inconsistent with the Legislature’s enforcement mechanism and must be denied (Carrier v Salvation Army, supra, 88 NY2d, at 303-304; Sheehy v Big Flats Community Day, supra, 73 NY2d, at 634-635).
Defendants have also moved to dismiss the defamation cause of action upon the grounds that plaintiffs have failed to set forth sufficient factual allegations in support of their claim. CPLR 3016 (a) requires that a defamation claim set forth the particular words complained of. Plaintiffs have failed to do this. Plaintiffs have also failed to identify the individuals to whom the defendants have allegedly published the allegedly defamatory statement. A defamation claim must be dismissed for failure to state a cause of action where the allegedly defamatory statements are not pleaded with specificity or the plaintiffs’ papers fail to specify to whom the statements were published (Ott v Automatic Connector, 193 AD2d 657, 658; Wil *513 liams v Varig Brazilian Airlines, 169 AD2d 434, 437; Bell v Slepakoff, 224 AD2d 567, 568-569).
There being no tort action against the individual defendants, there can be no tort action in respondeat superior against the defendant Albany Medical Center (Miller v Rickman, 184 AD2d 191, 193).
Accordingly, the defendants’ motion to dismiss the complaint is granted and plaintiffs’ motion for partial summary judgment is denied, all without costs to any party.