**Joseph M. WHITING, Plaintiff,**

v.

**THE INCORPORATED VILLAGE OF OLD BROOKVILLE, The Old Brookville Board of Commissioners, and Chief Charles K. Smith, Ltn. John Post and Ltn. Maurice Sullivan, individually and as members of the Old Brookville Police Department, Defendants.**

**No. 96 CV 3442 (ADS).**

United States District Court, E.D. New York.

June 17, 1998.

Lacara & Galvez, P.C. (Garrett Lacara, of counsel), West Sayville, NY, for Joseph M. Whiting.

Thurm & Heller (Milton Thurm, Steven T. Sledzik, of counsel), New York City, for Incorporated Village of Old Brookville and Old Brookville Bd. of Police Com'rs.

Hopkins, Kopilow & Weil (Stanley R. Kopilow, of counsel), Garden City, NY, for Chief Charles K. Smith, Lt. John Post and Lt. Maurice Sullivan.

**MEMORANDUM DECISION AND ORDER**

SPATT, District Judge:

This case arises from the claims of a discharged police officer, Joseph M. Whiting ("Whiting" or "the plaintiff") against the defendants, the Incorporated Village of Old Brookville, the Old Brookville Board of Police Commissioners (collectively referred to as "the Village defendants"), and the individual defendants, Chief Charles K. Smith and Lieutenants John Post and Maurice Sullivan, for alleged violations of 42 U.S.C. § 1983 ("Section 1983"), and Sections 40–c and 44–a of the Civil Rights Law of the State of New York ("NYCRL"). Presently before the Court are two motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, one filed by the Village defendants, and the other on the individual defendants' behalf.

## I. BACKGROUND

### A. The Factual Allegations Set Forth in the Complaint

The following factual allegations are derived from the complaint, except where indicated otherwise.

The plaintiff is an individual who identifies himself as "Italian American" (Complaint, at ¶ 10). On or about June 2, 1989, he joined the Old Brookville Police Department, where he served under the direct supervision of Sergeants Thomas Egan and Kevin Quigley, as well as defendants Chief Charles K. Smith ("Smith"), and Lieutenants John Post ("Post") and Maurice Sullivan ("Sullivan").

According to the plaintiff, "from [his] starting day, he [was] an outspoken advocate for police officers [*sic*] rights, writing articles for the Police Benevolent Association, and

speaking out on behalf of fellow officers being mistreated and abused by the Supervising members of the force." (Complaint, at ¶ 12). In addition, Whiting asserts that he "notified the Nassau County District Attorneys [*sic* ] Office when he learned that ... Sullivan was using illegal drugs ... [and that members of the] Department[ ] [were] illegal[ly] accept[ing] gratuities...." (Complaint, at ¶ 13). He also states that he told Chief Smith about Sullivan's purported drug use and extramarital affair (Complaint, at ¶ 13).

The plaintiff does not provide the dates for these incidents. Nevertheless, the Court assumes that they occurred prior to August 1989, because the complaint alleges that as a "*result* of these actions and involvements, plaintiff has, in retaliation, been subject to continuous and ongoing selective persecution, harassment, intimidation and discrimination," with the first complained-of act occurring in August 1989 (Complaint, at ¶ 14). This "harassment, intimidation, and discrimination" involves the following alleged incidents, which are numbered according to the paragraphs designated in the complaint:

15. Beginning in August 1989, defendant Sullivan began "constantly" referring to the plaintiff as a "know it all Guinea."
16. After a June 1990 incident, the exact nature of which is unspecified but during which the plaintiff purportedly "spoke out [regarding an unidentified issue] on behalf of fellow police officer Buddy Shuck, he was reprimanded by ... Sullivan, and thereafter consistently given undesirable assignments, and ordered to fill out extra paperwork." On December 29, 1990, the plaintiff was ordered, in the snow, to remove signs from lampposts with a shovel, an "activity ... outside the scope of routine police duties [which] was never done by any other police officer[,] and as a result, plaintiff suffered a severe back injury. Thereafter, plaintiff was constantly denied sick leave for this injury."
17. Several months later, on July 22, 1991, Sullivan "encouraged" other police officers to throw the plaintiff, who was dressed in uniform, into a swimming pool at a police department party. Consequently, the plaintiff sustained injuries to his arm, elbow and thumb. Sullivan "rewarded" the officer who managed to throw the plaintiff into the pool by offering him a day off.
18. When the plaintiff complained about the pool incident to his superiors, Smith "ignored" him, while Egan subjected him to "racially derogatory and discriminatory statements." For example, Egan called him a "dumb guinea wop who had hair like a nigger" and asked, "What's with your hair, anyway? What are you half nigger?"
19. On March 4, 1992, fellow police officer Anthony Lavardo allegedly assaulted the plaintiff, who missed several days of work because of the resulting injuries. Unnamed police department supervisors purportedly "encouraged" the attack. When the plaintiff reported this to Smith, Post and another sergeant, "the incident was ignored and no investigation [was] conducted."
20. In August 1992, the plaintiff was involved in a "dispute" with a "friend" named Lynn Barringer, who reported the matter to the plaintiff's supervisors. Smith and Post investigated Barringer's complaint, and purportedly "closed" the case after designating it a "civil" matter. However, the plaintiff contends, at or about that time, he was "for no reason" removed from the desirable "overtime list."
21. On or about October 14, 1992, Sullivan "improperly influenced plaintiffs [*sic* ] girlfriend Donna Quinn, to file charges against plaintiff, by stating false allegations against him relating to abuse, harassment and stalking of other woman [*sic* ]. These allegations were entirely false, and on or about November 2, 1992, when Donna Quinn realized the deception, she was not permitted ... by Sullivan, to

withdraw the charges, despite her every effort to do so."

22. On October 9, 1992, the plaintiff was ordered by an unspecified person not to have any contact with Donna Quinn or her family, "in violation of the plaintiffs [*sic* ] civil rights, and against the wishes of Ms. Quinn." Plaintiff was threatened with dismissal if he violated this order.

23. On October 30, 1992, "in an attempt to humiliate plaintiff, Whiting became the subject of a seven (7) hour departmental interrogation by Ltn. Sullivan, in the presence of Ltn. Post, Det. Sgt. Kenary, P.O. Lamb, and P.O. Larry Gordon. At that interrogation plaintiff appeared with an attorney, who was not permitted to actively participate in the proceedings, in direct violation of established departmental procedures. As a result of the abusive conduct of the interrogation, which plaintiff was denied the right to memorialize in any way, plaintiff suffered an emotional breakdown, and the interrogation had to be stopped." When the plaintiff began crying, he was "relieved of his identification, weapon and shield, and placed on involuntary sick leave, absent any departmental authority."

24. On October 31, 1992, when the plaintiff went to the precinct to inquire why he had been treated this way, he was ordered to leave and threatened with arrest for trespass if he remained on the premises.

25. On November 3, 1992, Sullivan and Post conducted another interrogation, during which the plaintiff was "totally deprived [of] his right to counsel, in violation of department procedures." Consequently, the plaintiff developed "severe chest pains, and shortness of breath" requiring his "removal" to a local hospital.

26. On November 26, 1992, after being released from the hospital, "plaintiff was again interrogated by Ltn. Sullivan, and denied his right to have counsel present during the interrogation." The complaint states that the Department refused to accept and consider the "medical and psychological reports" that plaintiff submitted on his own behalf, indicating that he was fit to return to duty.

27. On February 1, 1993, the plaintiff was suspended without pay and served with six (6), unspecified, departmental charges, to which he pleaded not guilty. The plaintiff states that he filed an EEOC complaint because he felt he had been "unjustly treated." The complaint does not indicate the basis for the EEOC complaint.

28. On April 2, 1993, in "retaliation for his filing with the EEOC, sixty (60) amended charges were filed against him, to which he pled not guilty. The gravamen of these charges were the incidents with Donna Quinn, defendants [*sic* ] girlfriend, and Lyn Barringer, defendants [*sic* ] friend of 10 years, which defendant police supervisors had improperly initiated, influenced and investigated."

29. While under suspension and awaiting his departmental trial on these charges, the defendants "engaged in a systematic pattern of harassment against plaintiff in that they: undermined and inaccurately filled out his workman [*sic* ] compensation application; failed to forward his employment information to his life insurance company; undermined any attempts on his part to get other employment during the pendency of his suspension; failed to forward his mail from doctors and medical insurance companies for injuries sustained while in their employ; and removed most positive portions of plaintiffs [*sic* ] personnel file, including request[s] for commendations. All of these acts were in direct violation of departmental procedures and the Workman [*sic* ] Compensation Laws."

30. The Old Brookville Board of Police Commissioners ("the Board") designated a Hearing Officer, Richard P. Goodwin, who also is the Mayor of

Brookville. On June 29, July 26, and July 29, and August 23, 1993, a transcribed, departmental hearing was held before Goodwin. According to the complaint, the plaintiff was "not permitted to call any witnesses at the hearing," and Goodwin eventually recommended that the plaintiff be dismissed from the department.

31. On December 1, 1993, the Board of Police Commissioners adopted Goodwin's recommendation.

32. On December 7, 1993, defendants [*sic* ] pattern and practice of discrimination and harassment culminated with the firing of police officer Whiting from the Department. Since then defendants have sabotaged and undermined every effort of plaintiff to get new employment by refusing, after being requested, to send employment, insurance and medical records in their possession and control, and plaintiff remains unemployed.

### B. The Claims Set Forth in the Complaint

The plaintiff filed the summons and complaint in this action on July 11, 1996, alleging five causes of action based on the foregoing allegations:

1. A claim for damages under 42 U.S.C. § 1983 for violating "plaintiff['s] right to freedom of speech and assembly [under the First and Fourteenth Amendments to the Constitution], freedom from illegal detention, physical abuse, coercion, and intimidation, right to equal protection under the law and due process of law, and right to be free of racial discrimination.... By reason of the foregoing, plaintiff suffered bodily injury; were [*sic* ] prevented from working and lost earnings; suffered and continues to suffer from nervous shock and mental anguish; was deprived of liberty; and was otherwise greatly injured";
2. Intentional infliction of emotional distress;
3. Statutory penalties under NYCRL § 40–d, and additional damages, for violations of NYCRL §§ 40–c and 44–a;
4. Negligence on the part of Nassau County in screening, supervising and training its officers; and
5. Judgment declaring that "the procedures used in terminating plaintiff's employment were unconstitutional," in that "[p]laintiff while engaging in Police Benevolent Activities and advocacy was engaged in his right of free speech and assembly, as guaranteed to him by the First and Fourteenth Amendments [and] to the extent he was later dismissed from his job based upon pretextual reasons, without due process, was unconstitutional and in violation of the laws of the State of New York."

While delineated as a single claim, the First Cause of Action includes, apparently, eight distinct causes of action: (1) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; (2) *§ 1983/procedural due process,* stemming from the discharge hearing before Hearing Officer Goodwin; (3) *§ 1983/equal protection,* based on the defendants' supposed creation of a ethnicity-based hostile work environment; (4) *§ 1983/equal protection,* premised on the defendants' supposed ethnicity-based decision to discharge him; (5) *§ 1983/equal protection,* arising from the defendants' supposed creation of a race-based hostile work environment; (6) *§ 1983/equal protection,* based on the defendants' supposed race-based decision to discharge him; (7) *§ 1983/illegal detention;* (8) *§ 1983/physical abuse.* Similarly, the Fifth Cause of Action evidently encompasses two claims: (1) *§ 1983/procedural due process,* stemming from the discharge hearing before Hearing Officer Goodwin; and (2) 1983/free speech, based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern. The Court observes that these claims seemingly are identical to their counterpart articulated in the First Cause of Action, the only difference being that the Fifth Cause of Ac-

tion seeks declaratory relief, while the First Cause of Action requests damages.

C. **The Village Defendants' Rule 56.1 Statements**

1. *The Plaintiff's "Due Process" Claims*

In support of their motion for summary judgment, the Village defendants submit a statement pursuant to Local Rule 56.1. The plaintiff concedes that many of the factual allegations contained therein "are hereby deemed admitted and accepted without exception." (Plaintiff's Rule 56.1 Counter-Statement, ¶ 6). For example, the defendants state that the designation of the hearing officer was in accordance with the rules and regulations of the defendant Board, and that at the hearing, the plaintiff was represented by counsel and permitted to present evidence, call some witnesses, and cross-examine witnesses.

There also is no dispute that at the hearing, the plaintiff's attorney sought to call a witness who would testify regarding Whiting's theory that he was being "selectively prosecuted" by the police department. The Hearing Officer made an initial ruling declining to permit testimony on the issue of selective prosecution. However, the Hearing Officer permitted the plaintiff and the Department to submit letter briefs on the relevance of evidence of selective prosecution. After submission of papers, the Hearing Officer ruled that he would not allow the introduction of testimony regarding selective prosecution because "there has been no valid offer of proof to justify a defense of selective prosecution. The case law appears clear an allegation must exist that selective prosecution was deliberately based on racial, religious or other impermissible standards." When the plaintiff thereafter made an offer of proof as to the testimony of three witnesses he intended to call in support of his "selective prosecution defense," the Hearing Officer adhered to his ruling precluding this evidence.

A critical bit of procedural history, omitted from the complaint but conceded by the plaintiff in his Rule 56.1 Counter-Statement, is that by Notice of Petition and Petition dated January 24, 1994, and filed in the Supreme Court of the State of New York, Nassau County, the plaintiff initiated a proceeding pursuant to Article 78 ("Article 78 proceeding") of the New York Civil Practice Law and Rules ("CPLR"). In his Article 78 petition, the plaintiff sought a judicial ruling that the Board's determination was arbitrary, capricious, and against the weight of the evidence adduced at the disciplinary hearing. In addition, he challenged the severity of the penalty imposed. By Order entered on April 11, 1994, the Article 78 proceeding was transferred to the New York State Appellate Division, Second Department, pursuant to CPLR § 7804(g).

In his sixty-six page brief to the Appellate Division, the plaintiff sought reversal of the Department's determination on the grounds that "the Hearing Officer Violated ... [plaintiff's] due process rights by refusing to permit [plaintiff's] counsel to present at the administrative hearing certain exculpatory witnesses and evidence," in support of his "selective prosecution" theory. By Decision and Judgment dated October 16, 1995, the Appellate Division upheld the Hearing Officer's decision and dismissed the Article 78 petition with costs. *Whiting v. Village of Old Brookville Police Dept.,* 220 A.D.2d 600, 632 N.Y.S.2d 629, 632 N.Y.S.2d 629 (2d Dept. 1995). In its decision, the Second Department found that the Board's determination was "supported by substantial evidence" and that the penalty of dismissal was "not so disproportionate to the offense as to be shocking to one's sense of fairness." *Whiting v. Village of Old Brookville Police Dept.,* 220 A.D.2d at 600, 632 N.Y.S.2d at 629, 632 N.Y.S.2d at 629. With respect to the due process claim, the Court stated that the plaintiff's "remaining contentions are without merit." By a decision and order dated February 20, 1996, the Appellate Division denied the plaintiff's request for reargument or for leave to appeal to the New York State Court of Appeals.

2. *The Plaintiff's NYCRL Claims*

It is undisputed that the plaintiff filed a Notice of Claim, dated March 2, 1994, seeking to recover damages from Old Brookville

and the Police Department for personal injuries and emotional damages he allegedly sustained. However, as Whiting candidly recognizes, he "failed to serve notice upon the Attorney General prior to, or at the commencement of, this [NYCRL] action." (Plaintiff's Memorandum of Law, at 5, 20).

### D. The Plaintiff's Voluntary Dismissal of Certain Claims

During a transcribed conference held before this Court on December 9, 1997, the substance of which subsequently was memorialized in a letter by the plaintiff's counsel dated December 11, 1997, the plaintiff voluntarily agreed to discontinue the action as to the following defendants: Thomas Egan; Kevin Quigley; William J. Crowe, Jr.; W. Perry Welch; Peter L. Shea; Randolph Harrison; Edward Fogarty; Richard P. Goodwin; and the Incorporated Villages of Upper Brookville, Brookville, Muttontown, Matinecock, and Mill Neck. While the plaintiff correctly points out, in his Rule 56.1 Statement, that "there is no indication anywhere in the transcript [of December 9, 1997] that there was an agreement to discontinue the action against the Old Brookville Police Department, as suggested by [counsel for the Village defendants]," the plaintiff's letter of December 11, 1997 expressly dismisses the complaint against the Old Brookville Police Department, and amends the caption of the case accordingly. For these reasons, the Court finds that sole remaining defendants are those listed in the caption set forth at the outset of this decision.

In addition, during an on-the-record status conference held before the Court on October 8, 1997, the plaintiff, through his attorney, voluntarily agreed to dismiss the Second Cause of Action for intentional infliction of emotional distress (Tr. of October 8, 1997, at 7), and the Fourth Cause of Action sounding in negligence (Tr. of October 8, 1997, at 9). Therefore, only those claims set out in the First (§ 1983), Third (NYCRL) and Fifth (§ 1983) causes of action remain and are at issue on the defendants' motions for summary judgment.

### E. The Individual and Village Defendants' Motions for Summary Judgment

The defendants move for summary judgment pursuant to Rule 56 on the grounds that: (1) the plaintiff cannot establish a claim that his procedural due process rights were violated by the defendants; (2) the doctrine of collateral estoppel bars plaintiff from relitigating his procedural due process claim, which was rejected in a state court proceeding; (3) any claims based on the factual allegations set forth in paragraphs 15 through 28 of the complaint are barred by the three-year statute of limitations applicable to Section 1983 causes of action; (4) if the plaintiff's federal claims are dismissed, the Court lacks jurisdiction over his pendant state law claims arising under the NYCRL; (5) the plaintiff's failure to submit to an examination pursuant to New York State General Municipal Law Section 50–h mandates dismissal of his NYCRL claims; (6) the plaintiff failed to file a notice of claim with the Attorney General with respect to his NYCRL claims, thereby barring those claims; and (7) with respect to the individual defendants, even if the Court were to find that plaintiff has enunciated an adequate due process claim, "the individual defendants [Smith, Post and Sullivan] are not proper parties to same as they were merely fact witnesses at the Departmental Hearing."

The Court observes that the defendants' motions for summary judgment are directed almost exclusively toward the plaintiff's § 1983/procedural due process claims, set forth in the First and Fifth Causes of Action, and his NYCRL claims, contained in the Third Cause of Action. Scant attention is paid to the remaining claims stated in the First and Fifth Causes of Action, except to the extent that the Village defendants contend they are premised on acts occurring outside the three-year statute of limitations period applicable to Section 1983 claims. The focus of the defendants' motions is unsurprising. Until now, the parties and the Court have been under the impression that the gravamen of the plaintiff's complaint was the denial of procedural due process during his discharge hearing. Whiting's prior coun-

sel contributed to this common assumption by stating during the October 8, 1997 conference that "Section 1983, due process" was "basically the crux of our [remaining] claims against the defendants...." (Tr. of October 8, 1997, at 8).

However, as stated above, and set forth more fully below, careful inspection of the complaint reveals that in addition to the § 1983/procedural due process claims stated in the First and Fifth Causes of Action, and the NYCRL claims set forth in the Third Cause of Action, there are seven additional Section 1983 claims, set forth in the First and Fifth Causes of Action: (1) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; (2) *§ 1983/equal protection,* based on defendants' supposed creation of a ethnicity-based hostile work environment; (3) *§ 1983/equal protection,* premised on the defendants' supposed ethnicity-based decision to discharge him; (4) *§ 1983/equal protection,* arising from the defendants' supposed creation of a race-based hostile work environment; (5) *§ 1983/equal protection,* based on the defendants' supposed race-based decision to discharge him; (6) *§ 1983/illegal detention;* (7) *§ 1983/physical abuse.*

## II. SUMMARY JUDGMENT

### A. The Standard

A Court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505; *Vann v. City of New York,* 72 F.3d 1040 (2d Cir.1995).

Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### B. The First and Fifth Causes of Action: § 1983/Procedural Due Process

The plaintiff's First and Fifth Causes of Action articulate a claim for the denial of procedural due process during the disciplinary hearing which eventually led to Whiting's dismissal. The complaint does not indicate what "process" he was denied at the hearing. After perusing the complaint, the Court found a single allegation relating to the conduct of the hearing: "[p]laintiff, despite requests and the right to do so, was not permitted to call any witnesses at the hearing." (Complaint, ¶ 30). Actually, as the plaintiff concedes in his opposition papers, that is a misstatement, inasmuch as he was permitted to call some witnesses at the hearing. He now shifts gears, and maintains that his procedural due process claim encompasses the "deni[al of] the opportunity to present evidence of selective prosecution and to impeach the credibility of a key department witness, to wit: Lynn Bahringer." Further, the plaintiff suggests that his procedural due process claim includes an attack on the impartiality and selection of the hearing officer.

The Court is unable to discern any reference whatsoever to such claims in the complaint. Regardless, even affording the complaint the generous reading he urges, the Court is persuaded by the defendants' argument that the availability of Article 78 review precludes the plaintiff's due process claim.

It is well settled that in considering a claimed deprivation of due process in an employment context, a two step inquiry is required. First, it must be determined whether a plaintiff has a property right in continued employment. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Narumanchi v. Board of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988). Assuming a property right exists, a court then must determine if that right was deprived without due process of law. This leads to the second step of the inquiry; determining how much process the plaintiff was due and whether the constitutional minimum was afforded in the particular case. *See Narumanchi,* 850 F.2d at 72.

Here, the parties do not dispute that the plaintiff's discharge implicated a protectible property interest. Instead, their arguments focus on the second step of the analysis, namely, whether he was afforded procedural due process. Citing the Second Circuit's opinions in *Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877 (2d Cir.1996), and *Marino v. Ameruso,* 837 F.2d 45 (2d Cir.1988), the defendants contend that the plaintiff was entitled only to a disciplinary hearing, which he received, and that the availability of Article 78 review in state court bars plaintiff's procedural due process claims. The Court agrees.

The Supreme Court has held that the availability of a state remedy to challenge alleged deprivations of protectible liberty or property interests may defeat a litigant's procedural due process claim. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("overrul[ing] Parratt to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life,

liberty, or property under the Fourteenth Amendment"). *Parratt* and subsequent cases instruct that the determinative question is whether the deprivation "was occasioned pursuant to some established state procedure, or whether it was the result of a random and unauthorized failure of state agents to follow an established state procedure." *Pleickhardt v. Janoski,* No. Civ. 83–2314, 1989 WL 47705, *3 (E.D.N.Y. April 28, 1989) (discussing *Parratt*). In *Parratt,* a state prisoner initiated a Section 1983 action for the negligent loss of hobby materials, that he had ordered by mail, due to the prison officials' failure to follow the codified prison procedures for handling inmate mail. The Supreme Court concluded that the inmate suffered no procedural due process violation, even though the property deprivation occurred under color of state law, because it was not precipitated by any established state procedure. *See Parratt,* 451 U.S. at 541, 543, 101 S.Ct. 1908. Rather, it was the result of an "unauthorized and random" failure of state actors to follow state-established procedure. *Id.* Therefore, the Supreme Court reasoned, the post-deprivation hearing provided by the State through its torts claims procedure provided the prisoner all the process constitutionality due him. *Id.* Significantly, the Court specifically underscored that "there [was] no contention that the procedures themselves [were] inadequate." *Id.* at 543, 101 S.Ct. 1908.

The Second Circuit applied the same reasoning in *Marino v. Ameruso, supra,* 837 F.2d 45. There, a dismissed New York City employee sued the City Department of Transportation, alleging deprivation of property interest in his job without due process. The plaintiff claimed he was denied procedural due process because an Administrative Law Judge made an erroneous evidentiary ruling during his discharge hearing. Instead of pursuing an available Article 78 action in state court, the plaintiff filed a Section 1983 claim in federal court. Citing *Parratt v. Taylor,* the Court of Appeals affirmed the district court's dismissal of the procedural due process claim. *Id.* at 47. In so doing, the Second Circuit emphasized that "the Supreme Court has clearly distin-

guished between a claim that an established state procedure does not afford procedural due process and a claim that a property right was lost because of a random and unauthorized act by a state actor." *Id.* The Court found that the complaint "lack[ed] the essential elements of a deprivation of procedural due process" because the plaintiff "makes no claim that the Department of Transportation authorizes its ALJs to deprive respondents of any federal procedural right or otherwise to make unlawful evidentiary rulings." *Id.* Notably, the Court expressly assumed, for the purposes of its analysis, that the ALJ's evidentiary ruling was an error "of constitutional magnitude." *Id.* The Court concluded with its observation that "Section 7803(3) of [the CPLR] provides for judicial review of administrative agency error, including whether a determination was affected by an error of law.... Absent a showing of inadequate state procedures, [the] claim must fail." *Id.*

Most recently, in *Hellenic American Neighborhood Action Committee v. City of New York, supra,* 101 F.3d 877, the Court of Appeals held that conduct by city officials "in flagrant violation" of the city charter did not constitute a deprivation of procedural due process, because the plaintiff *could have* brought an Article 78 proceeding in state court, 101 F.3d at 881–882. Accordingly, the Court opined, the *mere availability* of this post-deprivation remedy, even if the aggrieved plaintiff did not take advantage of it, was adequate to satisfy the demands of due process.

In view of this clear-cut authority, the Court finds that since an Article 78 proceeding—the exact post-deprivation review deemed adequate in *Marino*—was accessible to the plaintiff *and, in fact, utilized by him,* the Section 1983 due process claim must be dismissed.

With respect to the purported erroneous evidentiary rulings of the Hearing Officer, the plaintiff raised this very issue in his Article 78 proceeding before the Second Department. Accordingly, he was afforded adequate post-deprivation review in state court, precluding any federal claim on procedural due process grounds.

Equally unavailing is plaintiff's theory that his procedural due process claim "questions the impartiality of the Hearing Officer." Aside from the fact that such an allegation is not found anywhere in the complaint, the Second Circuit's reasoning in *Marino* and *Hellenic* is fatal to this prong of the plaintiff's due process claim as well. The Court notes that Hearing Officer Goodwin was selected pursuant to New York State Civil Service Law [NYSCSL] Section 75, which provides that a disciplinary hearing of a municipal employee "shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person designated by such officer of body in writing for that purpose." Even assuming that the plaintiff's allegations of bias were true, and that such served to deprive plaintiff of a protectible property interest, this would "describe at most 'random' and 'unauthorized acts' by state actors: i.e., a failure by state actors to follow the proper procedures contemplated by NYSCSL section 75. Plaintiff does not claim that section 75 of the New York Civil Service law in any way authorizes [ ] Board members [or the Hearing Officer] to act as partial adjudicators. Accordingly, since plaintiff's challenge is not to the established procedures themselves, the availability of Article 78 review renders plaintiff's procedural due process claim fatally deficient." *Pleickhardt v. Janoski,* No. Civ. 83–2314, 1989 WL 47705, *2 (E.D.N.Y. April 28, 1989).

In the Court's view, the plaintiff fails to avoid the result mandated by the Second Circuit and Supreme Court caselaw. Struggling to distinguish those opinions, the plaintiff theorizes that "this case presents a unique problem because a major aspect of Plaintiff's claim of denial of due process was that he was selectively prosecuted *and* denied the opportunity to present evidence of the selective prosecution at his administrative hearing." (Plaintiff's Memorandum of Law, at 15). The plaintiff goes on to argue that the Hearing Officer's evidentiary rulings excluding evidence of "selective prosecution" were improper (Plaintiff's Memorandum of Law, at 16–19), and that since "the general practice [of New York State courts in Article

78 proceedings is to] review[] only that which is contained within the four corners of the record ... the hearing officer effectively deprived the Plaintiff of his Article 78 review of his claim [that he was selectively prosecuted]" by excluding this evidence (Plaintiff's Memorandum of Law, at 17–19). The Court is not persuaded by this argument, which amounts to nothing more than a disagreement with the Hearing Officer's evidentiary rulings. The Hearing Officer's decision to exclude evidence of the plaintiff's "selective prosecution defense" was a matter of record. Contrary to the plaintiff's theory that he was unable to raise the issue before the Second Department, he did, in fact, advance this very contention before that Court. The Appellate Division found the claim to be "without merit," and not, as the plaintiff now suggests, unreviewable.

For the foregoing reasons, the Court grants the Village and individual defendants' motions for summary judgment with respect to the plaintiff's First and Fifth Causes of Action based on procedural due process.

### C. The Third Cause of Action: Whiting's NYCRL Claims

The plaintiff also alleges, in his Third Cause of Action, that the defendants violated N.Y. Civil Rights Law Section 40–c, which provides that "[n]o person shall, because of race ... be subjected to any discrimination in his civil rights ... by any other person or by any firm, corporation or institution ..." NYCRL § 40–c (McKinney 1992). However, as defendants correctly note, and as Whiting concedes (Plaintiff's Memorandum of Law, at 20), a plaintiff must first notify the Attorney General of the State of New York at or before commencing an action under that section. NYCRL § 40–d (McKinney 1992). "Failure to comply with that statutory prerequisite mandates dismissal of the claim." *Harvey v. NYRAC, Inc.,* 813 F.Supp. 206, 212 (E.D.N.Y.1993) (Citing *Silver v. Equitable Life Assurance Soc'y,* 168 A.D.2d 367, 368, 563 N.Y.S.2d 78, 80 (1st Dept. 1990); *People v. Fuller,* 590 N.Y.S.2d 159, 161–63, 155 Misc.2d 812 [N.Y. City Crim.Ct.1992]). Here, the plaintiff acknowledges that he did not file a timely notice with the Attorney General of the State of New York. Accordingly, summary judgment shall be entered against plaintiff on his Section 40–c cause of action.

The plaintiff seeks to avoid dismissal of his Section 40–c claim by noting that he also has asserted a claim under NYCRL Section 44–a, which, he points out, does not contain a notification requirement. NYCRL Section 44–a states, in relevant part, that "A person who ... [e]xcludes a citizen of this state, by reason of race, color, creed, national origin or previous condition of servitude, from any public employment ... [i]s guilty of a misdemeanor, punishable by fine of not less than fifty dollars nor more than five hundred dollars." NYCRL § 44–a(1) (McKinney 1992). It is not surprising that no notification requirement is contained in that provision, given that it is a criminal statute which does not give rise to a private cause of action. *Cf. Larson v. Albany Medical Center,* 662 N.Y.S.2d 224, 173 Misc.2d 508 (N.Y.Sup.Ct. 1997) (concluding that there was no private cause of action available to employees who alleged retaliatory discharge in violation of state civil rights provision, which made it a crime for hospitals and other institutions to discriminate against any person for refusing to participate in performing abortions). The plaintiff cannot pursue a private cause of action under Section 44–a.

Accordingly, the Court grants the defendants' motions for summary judgment with respect to the plaintiff's Third Cause of Action based on violations of the NYCRL. Since the Court concludes that the plaintiff's NYCRL causes of action must be dismissed for failure to file timely notice, the Court does not consider the additional grounds advanced by the defendants in support of their motions for summary judgment with regard to these claims.

### D. The Remaining Claims

In view of the foregoing, the plaintiff's remaining claims are stated in the First and Fifth Causes of Action and include the following: (1) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; (2) *§ 1983/equal*

*protection,* based on the defendants' supposed creation of a ethnicity-based hostile work environment; (3) *§ 1983/equal protection,* premised on the defendants' supposed ethnicity-based decision to discharge him; (4) *§ 1983/equal protection,* arising from the defendants' supposed creation of a race-based hostile work environment; (5) *§ 1983/equal protection,* based on the defendants' supposed race-based decision to discharge him; (6) *§ 1983/illegal detention;* (7) *§ 1983561physical abuse.*

Without specifically discussing any of these causes of action, the Village defendants move for summary judgment on the ground that much of alleged conduct forming the predicate for these claims, set forth in paragraphs 15 through 28 of the complaint, occurred outside the three-year statute of limitations applicable to Section 1983 causes of action. The individual defendants do not address these claims in their summary judgment motion.

There is no dispute that claims brought under Section 1983 are subject to New York's three year statute of limitations. *See Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996). A cause of action under the statute accrues when a plaintiff knows or has reason to know of the injury that serves as the basis for the action. *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995).

As the plaintiff commendably concedes (Plaintiff's Memorandum of Law, at 14), most of the incidents referred to in his complaint are barred by the statute of limitations, since they occurred more than three years prior to July 11, 1996, the date when he initiated this lawsuit. Specifically, because the factual allegations set forth in paragraphs 15 through 28 of the complaint all occurred prior to July 11, 1993, in the plaintiff's own words, such incidents "would be precluded from serving as the bases for a cause of action because of the Statute of Limitations." (Plaintiff's Memorandum of Law, at 14). Accordingly, the Court concludes that the following claims are time barred: (1) *§ 1983/equal protection,* based on defendants' supposed creation of a ethnicity-based hostile work environment; (2) *§ 1983/equal protection,* arising from the defendants' supposed creation of a race-based hostile work environment; (3) *§ 1983/illegal detention;* and (4) *§ 1983/physical abuse.*

However, the Court notes that not all of the relevant factual allegations occurred prior to the critical three-year period. Significantly, the plaintiff was not discharged until December 7, 1993 (Complaint, ¶¶ 30–32). Accordingly, the following claims were timely commenced: (1) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; (2) *1983/equal protection,* premised on the defendants' supposed ethnicity-based decision to discharge him; and (3) *§ 1983/equal protection,* based on the defendants' supposed race-based decision to discharge him. It appears, therefore, that the plaintiff has three surviving claims, based on his allegations that he was discharged because of racial discrimination, ethnic discrimination, and in retaliation for exercising his freedom of expression. Since the defendants do not move to dismiss these claims relating to a purportedly unlawful discharge, or move for dismissal or summary judgment on the First and Fifth Causes of Action on any ground other than untimeliness, these three claims withstand the defendants' motions for summary judgment.

## III. CONCLUSION

After reviewing the parties' submissions, and for the reasons stated above, it is hereby

**ORDERED**, that the Court will treat the First Cause of Action set forth in the complaint as including the following eight claims: (1) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; (2) *§ 1983/procedural due process,* stemming from the discharge hearing before Hearing Officer Goodwin; (3) *§ 1983/equal protection,* based on the defendants' supposed creation of a ethnicity-based hostile work environment; (4) *§ 1983/equal protection,* premised on the defendants' supposed ethnicity-based decision to discharge him; (5) *§1983/equal protection,* arising from the defendants' supposed creation of a

race-based hostile work environment; (6) *§ 1983/equal protection*, based on the defendants' supposed race-based decision to discharge him; (7) *§ 1983/illegal detention;* (8) *§ 1983/physical abuse;* and it is further

ORDERED, that the Court will treat the Fifth Cause of Action set forth in the complaint as including the following two claims: (1) *1983/procedural due process*, stemming from the discharge hearing before Hearing Officer Goodwin; and (2) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; and it is further

ORDERED, that the defendants' motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted with respect to the following claims: (1) the Third Cause of Action based on violations of the NYCRL; (2) *§ 1983/procedural due process*, stemming from the discharge hearing before Hearing Officer Goodwin; (3) *§ 1983/illegal detention;* (4) *§ 1983/physical abuse;* (5) *§ 1983/equal protection*, based on defendants' supposed creation of a ethnicity-based hostile work environment; and (6) *§ 1983/equal protection*, based on defendants' supposed creation of a race-based hostile work environment; and it is further

ORDERED, that the parties are directed to appear before the Court on June 22, 1998, at 9:00 a.m., for jury selection on the three remaining claims which relate to the plaintiff's discharge: (1) *§ 1983/free speech,* based on the defendants' decision to discharge him purportedly in retaliation for speaking out on matters of public concern; (2) *§ 1983/equal protection*, premised on the defendants' supposed ethnicity-based decision to discharge him; and (3) *§ 1983/equal protection*, based on the defendants' supposed race-based decision to discharge him.

SO ORDERED.