Grace **LIOTTA, Roger Melzer, Legrand Reed, Daniel Beekman, Sam and Arnold Goldstein, Miller Lattimore, Jr. and Sheldon Katz, the Real Estate Board of New York, Inc., Associated Builders and Owners of Greater New York Incorporated, Bronx Realty Advisory Board Incorporated, Community Housing Improvement Program, Inc., and Rent Stabilization Association of N. Y. C., Inc., Plaintiffs,**

v.

**RENT GUIDELINES BOARD FOR the CITY OF NEW YORK, Defendant.**

**No. 82 Civ. 5770 (WCC).**

United States District Court,
S. D. New York.

Sept. 27, 1982.

Jay Goldberg, P. C., New York City, for plaintiffs; Michael G. Berger, New York City, of counsel.

Frederick A. O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendant; Al Fredericks, Patricia Kruger, Jeffrey Glen, Asst. Corp. Counsels, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiffs have filed suit against defendant Rent Guidelines Board for the City of New York ("the Board") under 42 U.S.C. § 1983 seeking to enjoin the October 1 enforcement of Rent Guideline Order No. 14 ("Order 14"). That order, which the Board adopted at its meeting of June 25, 1982, sets limits on the amount of rent increases for rent-stabilized apartments. Plaintiffs claim that the June 25 meeting was so dominated by loud, angry and threatening shouts and noises from the unruly audience that rational deliberations on the guidelines was impossible. As a result, plaintiffs claim that Order 14 deprived them of property without due process of law. They seek an order by the court enjoining enforcement of Order 14 and directing the Board to convene a new meeting to reconsider the issues.

The case is now before the Court on defendant's motion to dismiss the complaint, Rule 12(b)(6), F.R.Civ.P. Because the parties have submitted affidavits in support of their positions, the motion will be treated as one for summary judgment. See Rule 12(b), F.R.Civ.P. For the reasons stated below, defendant's motion is granted and the complaint will be dismissed.

*Background*

The Rent Stabilization Law of 1969 (Title YY of the Administrative Code of the City of New York) covers apartments in buildings, containing six or more dwelling units, built after February 1, 1947 and before March 10, 1969 or built before February 1, 1947 but exempt from rent control. Rent stabilization also covers apartments constructed after March 1969 if the builders

received certain tax benefits. Approximately 875,000 apartments are now subject to the stabilization guidelines.

The defendant Board is a governing agency of the City of New York, established pursuant to the rent stabilization law. See N.Y.C.Adm.Code YY51–5.0 a. The board is composed of nine members appointed by the Mayor of New York; two members are tenant representatives, two are landlord representatives and five are public members. By statute, the Board must establish by July 1 of each year the maximum increases allowable for one-, two- and three-year leases for rent stabilized apartments. These levels are effective for a one-year period, beginning October 1. See N.Y.C.Adm.Code §§ YY51–5.0.

The rent stabilization law provides for self-regulation of owners through a real estate industry stabilization association. Plaintiff Rent Stabilization Association ("RSA") is the only such registered real estate industry association of apartment building owners. Each of the individual plaintiff owners is a member of the RSA. Under the RSA's code, all owner-members must abide by the rent adjustments for both renewal and vacancy leases established by the guideline orders of the Board. See §§ YY51–6.0.1, YY51–6.0b(4), c(2), (3), (4).

Before promulgation of the rent guidelines, the Board must hold one or more hearings in connection with each order. At these hearings, representatives of tenants, owners and members of the public can make statements. See § YY51–5.0h. Public hearings were held in connection with Order 14 on June 7 and June 10, 1982. Moreover, the Board held open meetings on May 21, May 26, June 14 and June 18, 1982 to discuss the factors relevant to the new guidelines. At these meetings, the public was present but did not participate. As an additional aid in establishing rent guidelines, the Board traditionally considers written submissions from various groups and instructs its staff to prepare a written report.

On June 25, 1982, the Board held its last meeting for the purpose of final delibera-

tions and voting on the annual rent guidelines. As required by Article 7, § 95 of the Public Officers Law, the meeting was open to the public. The Board adopted by a 5–4 vote Order 14, which provides for rent increases of 4, 7 and 10% for one-, two-, and three-year renewal periods, respectively. These increases are substantially less than those approved the previous year and, unlike past years, there is no additional increase allotted for a lease signed on a vacant apartment.

As previously stated, plaintiffs allege that the June 25 meeting was so disrupted by the unruly audience that the Board could not give reasoned consideration to its decision. According to plaintiffs, the crowd physically intimidated the Board while the continuous shouting, chanting and jeering made it impossible for Board members even to hear one another. Although other Board members repeatedly asked the chairman of the Board to adjourn the meeting or to move it to a quieter site, he rejected those requests. Plaintiffs now claim that as the result of the continuation of the disorderly meeting and the resulting passage of Order 14 without proper consideration, they have been deprived of property without due process of law.

*Discussion*

In order to state a claim under 42 U.S.C. § 1983, plaintiffs must allege that defendant acted under color of state law to deprive them of a property right without due process of law. See *Parratt v. Taylor,* 451 U.S. 527, 532, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420 (1981). Plaintiffs in the present case are not challenging the rent stabilization scheme as a whole but only the process in this particular case. Specifically, plaintiffs take issue with the constitutional validity of the June 25 meeting. Cast in its most basic light, plaintiffs' claim is that the chairman should have adjourned the meeting due to the commotion, instead of proceeding to final decision on the guidelines.

Plaintiffs' action cannot be sustained in this Court. Assuming without deciding that plaintiffs have satisfied the other requirements for stating a claim under

§ 1983, the Article 78 proceedings that exist under this regulatory framework satisfy the requirements of procedural due process. Article 78 proceedings provide for speedy review of administrative action and thus serve as an integral part of the regulatory process, rather than as a source of separate judicial review. Plaintiffs cannot complain that due process has been denied them when they have rejected the state procedure that is available to them for correcting the alleged procedural deficiency. If due process were denied every time an agency official made a decision under questionable circumstances, any losing party to the decision could attack it indirectly by suing the agency under § 1983. Although that result would not be unwarranted if the plaintiff were left without adequate opportunity to challenge the alleged error, such is not the case here. Plaintiffs cannot manufacture a § 1983 claim by pointing to the allegedly defective meeting while ignoring that part of the regulatory process that serves to redress administrative error. Rather, in considering whether defendants have failed to afford plaintiffs due process in connection with the rent guidelines, the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law. See *id.* at 536–37, 101 S.Ct. at 1913–14; *Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir. 1982); *Burtnieks v. The City of New York,* 81 Civ. 7270 (HFW) (S.D.N.Y. August 25, 1982).

In *Parratt v. Taylor, supra,* the Supreme Court significantly narrowed the range of procedural due process claims under § 1983. The case involved a prisoner's claim for the negligent loss of his hobby kit by prison administrators. 451 U.S. at 530. In deciding that the plaintiff had failed to state a § 1983 claim, the Court held that the availability of a state tort action for the loss of the kit meant that the plaintiff had not been deprived of his property without due process of law. Thus, the Court found the existence of a state tort remedy sufficient to satisfy the demands of the due process clause. 451 U.S. at 537–43, 101 S.Ct. at 1914–17.

The Seventh Circuit followed the *Parratt* analysis in *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir. 1982). In *Ellis,* the plaintiffs brought a § 1983 action against county welfare and judicial officers claiming that their due process rights were violated in connection with proceedings that led to plaintiff's grandchildren being removed from their home and adopted by strangers. *Id.* at 511. The court held that the plaintiffs' rights had not been infringed without due process because state law provided reasonable remedies for preventing families from being arbitrarily broken up by local domestic relations officers. *Id.* at 514–15. See also *Burtnieks v. The City of New York,* 81 Civ. 7270 (HFW) (S.D.N.Y. August 25, 1982) (plaintiff did not state claim against city under § 1983 for failure to give notice before demolishing plaintiff's building where plaintiff given opportunity to be heard following deprivation via state law tort suit).

Plaintiffs seek to distinguish this case from *Parratt* on the ground that *Parratt's* deprivation was the product of a random and unauthorized act by a state employee, rather than the result of unlawful state procedure. See *Parratt, supra,* 451 U.S. at 543, 101 S.Ct. at 1970. That argument succeeds only in revealing the lack of any significant difference between *Parratt* and the present case. As in *Parratt,* plaintiffs here do not claim that the rent stabilization procedures are inadequate; rather, the claim is that, given the specific circumstances at the June 25 meeting, the Board should not have continued its deliberations on the guidelines.

New York Civil Practice Law and Rules § 7803 provides the mechanism for challenging a specific decision of a state administrative agency. Section 7803(3) states, *inter alia,* that the litigant may raise the question of whether a determination was made in violation of lawful procedure or was arbitrary or capricious or an abuse of discretion. The state has provided Article 78 proceedings as part of the administrative procedure in order to accommodate challenges to specific agency actions. Plaintiffs' claim is such a challenge. Therefore, plaintiffs cannot be allowed to allege that

defendant has denied them due process when they have not availed themselves of the existing remedy.

This result does not mean that a § 1983 plaintiff always must exhaust his state remedies before proceeding in federal court. "The point, rather, is that there is no denial of due process if the state provides reasonable remedies ...." *Ellis, supra,* 669 F.2d at 515. The Court is not persuaded by plaintiffs' argument that an Article 78 proceeding is not an adequate remedy because it imposes a stricter burden of proof. In support of this argument, plaintiffs rely on *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d Cir. 1970). In *Escalera,* the Second Circuit held that defects in challenged procedures for terminating tenancies are not cured by the availability of an Article 78 proceeding. *Id.* at 866. The court reasoned that because the plaintiffs would bear the onus of commencing the action and of overcoming the presumption of regularity attaching to an agency's actions, an Article 78 proceeding could not substitute for the existence of adequate procedures in the first place. *Id.* As noted above, however, the present case does not concern a challenge to existing procedures but only to a specific decision to continue the meeting. Consequently, an Article 78 proceeding, as part of the state mechanism for reviewing agency decisions, provides plaintiffs with an opportunity to challenge the alleged error. Because plaintiffs cannot establish a denial of due process, defendant's motion is granted and the complaint is dismissed.

SO ORDERED.