Thomas P. VERRI, Plaintiff,

v.

Frank NANNA, individually and as Chief of Police of the Village of Elmsford, Stephen Woehrle, individually and in his capacity as Sergeant in the Village of Elmsford Police Department, Steven Fanelli, individually and in his capacity as Sergeant, Arthur DeAngelis, individually and as Mayor/Police Commissioner, Armand D'Amour, individually and as Police Commissioner, Manuel Riberio, individually and as Police Commissioner, Angela Kornizcky, individually and as Police Commissioner, Robert Williams, individually and as Police Commissioner, the Board of Police Commissioners of the Village of Elmsford, and the The Village of Elmsford, New York, Defendants.

Thomas P. VERRI, Plaintiff,

v.

Frank NANNA, Individually, the Board of Police Commissioners of the Village of Elmsford, N.Y. and the Village of Elmsford, New York, Defendants.

Nos. 96 Civ. 3158(WCC), 98 Civ. 0477(WCC).

United States District Court, S.D. New York.

Sept. 16, 1998.

Lovett & Gould, White Plains, NY (Jonathan Lovett, of counsel), for Plaintiff.

Lieberman, LeBovit & Brofman, Yorktown Heights, NY (Mitchell P. Lieberman, of counsel), for Defendant Frank Nanna.

Briccetti & Calhoun, White Plains, NY (Clinton W. Calhoun, III, of counsel), for Defendants Stephen Woehrle and Steven Fanelli.

Kerr & Weiss, New Paltz, NY (Marsha Solomon Weiss, of counsel), for Defendants Arthur DeAngelis, Armand D'Amour, Manuel Riberio, Angela Kornizcky, Robert Williams, the Board of Police Commissioners of Village of Elmsford, and Village of Elmsford, N.Y.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

The motions presently before the Court pertain to the second and fourth of four successive civil rights suits brought by plaintiff Thomas Verri, formerly an Elmsford police officer, against defendants Frank Nanna, Chief of Police of the Village of Elmsford; Sergeants Stephen Woehrle and Steven Fanelli; the Village of Elmsford Board of Police Commissioners (the "Board"), Mayor and Police Commissioner Arthur DeAngelis and Commissioners Armand D'Amour, Manuel Riberio, Angela Kornizcky and Robert Williams, and the Village of Elmsford (the "Village," collectively, the "Village defendants"), alleging violations of the First, Fourth and Fourteenth Amendments of the United States Constitution, Article I, §§ 6, 8 and 12 of the New York State Constitution and § 15 of the New York Civil Rights Law.[1] Defendants moved for summary judgment in Verri I, which was granted on August 1, 1997. *See Verri v. Nanna,* 972 F.Supp. 773, 803–04 (S.D.N.Y.1997). The parties now move for partial summary judgment in Verri II, 96 Civ. 3158(WCC), on Claims 1(c) and 3, and in Verri IV, 98 Civ. 0477(WCC), on Claims 1, 2, 3 and 5 to the extent that those claims allege a violation of the Due Process Clause of the Fourteenth Amendment.[2]

### Background

Plaintiff, formerly an officer of the Village of Elmsford Police Department (the "Depart-

1. The actions brought by plaintiff against defendants will be designated herein according to their respective filing dates as Verri I, II, III or IV.

2. Those claims also allege violations of the First Amendment and the New York State Constitution. *See infra* pages 2–4.

   Additionally, the Court notes that there appears to be some confusion as to which actions and to which defendants the present motions apply. Having reviewed the complaints in Verri II and IV, as well as the motion papers of each of the parties, the Court concludes first, that defendants Woehrle and Fanelli properly responded to plaintiff's motion for partial summary judgment and cross-moved for summary judgment on plaintiff's due process claims. It is without question that plaintiff's complaints, which name and allege facts against Woehrle and Fanelli, and then re-allege these facts under each claim, appear to apply to these defendants. However, the complaints are ambiguous as to which claim applies to which defendant because, based on the facts alleged, it makes little sense for plaintiff to have brought each claim against each defendant, even though a fair reading of the complaints shows that he does. Because the reason for any misunderstanding as to the scope of the complaints rests on plaintiff, we decline to impose sanctions against Woehrle and Fanelli for having cross-moved for summary judgment dismissing plaintiff's due process claims. Plaintiff is directed to amend his Complaint with respect to his equal protection and free speech claims (Verri II, Claims 1(a), (b), 2, and 3 and Verri IV, Claims 3, 4, 5, 6 and 7), so to clarify as against whom these claims are brought.

   Second, for the sake of judicial economy, we will consider defendant Nanna's motion with respect to both Verri II and IV, even though his Notice of Motion is limited on its face to the latter action. The content of Nanna's papers reveals that the motion was meant to be brought in both Verri II and IV, and plaintiff has responded to the motion with respect to both actions. Accordingly, we conclude that plaintiff has had actual notice of the scope of Nanna's motion and that it is therefore fair to consider the motion in each action. It should go without saying, however, that in the future, all submissions to this Court, including correspondence, must bear the correct docket number(s), in order for them to be appropriately considered.

ment"), was discharged from service on April 7, 1997 after having been found by the Village defendants to have violated various Department orders and regulations. Prior to taking disciplinary action against the plaintiff, at the request of the Department and pursuant to New York Civil Service Law § 75,[3] the Board held a series of hearings in March of 1996 and 1997, which is in part the subject of Verri II and IV. In these actions, plaintiff alleges that defendants Nanna, Woehrle and Fanelli retaliated against him, in violation of his right to free speech under the First Amendment, Article I, § 8 of the New York Constitution and § 15 of the New York State Civil Rights Law; protection against unlawful seizure and retention of property under the Fourth Amendment and Article I, § 12 of the New York State Constitution; and due process of law and equal protection under the Fourteenth Amendment and Article I, § 6 of the New York State Constitution, for his reporting of alleged violations of departmental procedures and for having filed Verri I, 95 Civ. 3163(WCC) and Verri III, 97 Civ. 0557(WCC), by "stag[ing] a series of events calculated to set [p]laintiff up on trivial purported charges of insubordination ... with a view towards instituting disciplinary charges against him and impairing his career in law enforcement." Plaintiff also claims that defendants violated his right to due process of law by suspending and terminating his employment "without any written decision, rationale, evaluation of the evidence [raised at the hearings or], findings of fact or credibility," and by failing to provide him with an impartial tribunal in violation of the Due Process Clause of the Fourteenth Amendment. Finally, plaintiff claims that by failing to discipline other officers who engaged in violations similar to those alleged against plaintiff, defendants selectively prosecuted plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff was first notified that charges had been brought against him on December 18, 1995, when he received a letter from defendant Nanna. *See* Pl.'s Ex. 2, Verri II. The letter was in the form of a "deficiency notice," that stated that plaintiff was being charged with three counts of "insubordination." *Id.* The letter described the basis for each count, providing plaintiff with the date, time and place, and the names of any witnesses, as well as citations of the pertinent regulations. *See id.* The letter also informed plaintiff that he would be suspended with pay until the Board conducted a hearing on the charges. *Id.* The Board held a hearing on March 16, 1996, at which time plaintiff was represented by counsel. On March 18, 1996, plaintiff was "found ... guilty as charged," pursuant to § 18 of chapter 306 of the unconsolidated laws of the State of New York, and suspended for twenty (20) days without pay, beginning March 29, 1996. *See* Pl.'s Ex. 4, Verri II. Plaintiff was informed of his suspension in writing on March 18, 1996. *See id.*

Plaintiff then returned to work in April, 1996, and continued to perform his previously assigned duties. On or around December 2, 1996, plaintiff was served with a notice of "charges and specifications of misconduct and/or incompetence," signed by defendant Nanna. The charges alleged that plaintiff had "slept while on duty" on five separate occasions, in violation of § 3.19.1 of the Rules, Regulations and Procedures of the Department, and had taken "more than the

---

**3.** Section 75 of the New York Civil Service Law provides that a police officer "shall not be removed or otherwise subjected to any disciplinary penalty ... except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." Furthermore, "[a] person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor, shall be furnished a copy of the charges ... and shall be allowed at least eight days for answering the same in writing. The hearing upon such charges shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other person designated by such officer or body for that purpose. In case a deputy or other person is so designated, he shall ... make a record of such hearing which shall, with his recommendations, be referred to such officer or body for review and decision. The person or persons holding such hearing shall, upon the request of the person against whom charges are preferred, permit him to be represented by counsel ... and shall allow him to summon witnesses in his behalf .... Compliance with technical rules of evidence shall not be required." N.Y. Civ. Serv. Law § 75 (McKinney's 1983 & Supp.1998).

allocated meal period" for police officers on three separate occasions, in violation of General Order 95–05 and Department memoranda dated May 20, 1994 and May 29, 1991. Pl.'s Ex. 1, Verri IV. The notice provided that plaintiff would be given five (5) days to respond to the charges and a hearing before the Board, where plaintiff would be allowed representation by an attorney and the opportunity to "present witnesses, and other proof . . . in [his] defense." *Id.* The notice further provided that "if found guilty of the charges and specifications," plaintiff could be "dismiss[ed] from service," "reprimand[ed]," or suspended without pay for a period of twenty (20) days. *Id.*

A hearing was held before the Board on March 24, 1997, at which time the Village Attorney presented sworn testimony, documentary evidence and videotapes in support of the charges against plaintiff. *See* Pl.'s Ex. 2, Verri IV; Def. Nanna's Rule 56.1 Stmt. at ¶ 2. While plaintiff cross-examined the Village's witnesses, he did not present any evidence or call any witnesses of his own. That same day, the Board sustained 22 of the 27 charges against plaintiff, pursuant to § 5711–q of the unconsolidated laws of the State of New York. *See* Pl.'s Ex. 3, Verri IV. Its decision was set forth on a "findings sheet," which provided the date, time and place of the alleged violations, the vote of each Board member and a tally of the votes. *See id.* The hearing was transcribed and produced 559 pages of transcript. *See* Def. Nanna's Ex. 1. On April 7, 1997, the Board voted to terminate plaintiff's employment. Plaintiff received notification of the termination in writing on April 8, 1997. *See* Pl.'s Ex. 4, Verri IV.

On March 17, 1998, plaintiff moved for a partial summary judgment in actions II and IV, ruling that the manner in which he was prosecuted, suspended and terminated by de-

fendants violated his right to free speech, equal protection and due process under the First, Fourth and Fourteenth Amendments. In July 1998, at the request of plaintiff's counsel, the Court agreed to consider on an expedited basis whether plaintiff's suspension and termination "without any written decision, rationale, evaluation of the evidence, findings of fact or credibility" violated his right to due process. Accordingly, all defendants responded to plaintiff's motion, and defendant Nanna cross-moved for a partial summary judgment dismissing each of plaintiffs' due process claims, with respect to him. On July 24, 1998, by summary order, the Court denied plaintiff's motion, to the extent that it had been reviewed, and informed the parties that it would explain the reason for its decision later, which it does in the present Opinion. The Court, however, declined to consider defendant Nanna's motion because plaintiff had not yet responded to it.

On August 7, 1998, by Notice of Motion, the Village defendants joined in defendant Nanna's cross-motion. On August 10, 1998, defendants Woehrle and Fanelli cross-moved for a partial summary judgment, ruling that they had not violated plaintiff's due process rights.[4]

The parties having fully briefed the due process issues, the Court now considers the balance of the outstanding motions and explains the basis for its July 24th Order. For the reasons that follow, the Court denies plaintiff's motion for a partial summary judgment ruling that his due process rights were violated by defendants and grants defendants' cross-motions.

### Discussion

■ Plaintiff brings his due process claims under § 1983. Accordingly, plaintiff must allege that "a person or persons acting under color of state law deprived [him] of

---

4. To the extent that plaintiff believes that the Village defendants gave improper notice of their intent to join in defendant Nanna's motion, plaintiff is mistaken. The Village defendants gave proper notice by duly serving a Notice of Motion and attorney affidavit upon plaintiff on August 7, 1998. Prior to that time, the parties had discussed both among themselves and with the Court the possibility that the remaining defendants would either cross-move for partial summary judgment or join in Nanna's motion. If plaintiff felt that he had inadequate time to respond to defendants' papers by August 10, 1998, the date previously designated by the Court for plaintiff to respond to Nanna's motion, he could have sought leave to respond to all papers on August 20th, the return date stated in the Village's Notice of Motion, or at some other appropriate time.

rights, privileges, or immunities secured by the constitution or laws of the United States." *McDarby v. Dinkins,* 907 F.2d 1334, 1336 (2d Cir.1990) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Plaintiff claims that defendants, acting under color of state law, deprived him of his right to continued employment. Property interests, such as this, are not created by the Constitution. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The New York Civil Service Law clearly creates a property interest in continued public employment. N.Y. Civ. Serv. Law § 75; *Marino v. Ameruso,* 837 F.2d 45, 46 (2d Cir.1988).

■ "The right to due process [however] 'is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)) (alteration in original). "The fundamental requisite" of this right "is the opportunity to be heard," *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "In the present context, this would require timely and adequate notice and 'an effective opportunity to defend by confronting any adverse witnesses and by presenting ... arguments and evidence orally.'" *Burtnieks v. City of New York,* 716 F.2d 982, 986 (2d Cir.1983) (quoting *Goldberg v. Kelly,* 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); *cf. Loudermill,* 470 U.S. at 545–46, 105 S.Ct. 1487 (tenured public servant "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," prior to termination, where

state provides full post-termination hearing). "These rights are particularly important in situations such as that presented here, where [plaintiff] asserts that the facts at issue were based on allegedly 'incorrect ... factual premises.'" *Burtnieks,* 716 F.2d at 986 (quoting *Goldberg,* 397 U.S. at 268, 90 S.Ct. 1011).

The parties do not dispute the application of these principles here. Rather, they contest whether plaintiff may now challenge the defendants' alleged errors in federal court, pursuant to § 1983, without first exhausting his state remedies by pursuing an Article 78 proceeding. Plaintiff argues not only that he can—but indeed, that he must—because it would have been either futile or impossible for him to have brought a timely Article 78 proceeding in state court. Plaintiff's argument is two-pronged. First, he asserts, with respect to the alleged defects in the hearing procedure, that an Article 78 proceeding would have been unavailing because he complains not of a random, unauthorized act by a state employee but an established state procedure. Second, he claims that because he only recently learned the extent of the ex parte communications among the defendants, an Article 78 proceeding would be barred by the statute of limitations. We disagree.

■ Plaintiff's first point, that he has pled a defect in an established state procedure is correct, because the actions of high-level Village employees, particularly when taken in concert, may be considered established state procedure in and of themselves. *Compare Patterson v. Coughlin,* 761 F.2d 886, 892 (2d Cir.1985) (alleged deprivation of liberty "neither 'random' nor 'unauthorized'" where plaintiff "was given a hearing, albeit a deficient one" allegedly by "officials with final authority"), and *Burtnieks,* 716 F.2d at 988 ("decisions made by officials with final authority over significant matters ... can constitute established state procedure") *with Federico v. Board of Educ. of Public Schools of Tarrytowns,* 955 F.Supp. 194, 201 (S.D.N.Y.1997) (alleged deprivation "occurred because of random and arbitrary acts—statements made by various Board ... members and [town] officials .... [plaintiff]

makes no claim that the due process violation was caused by an established state procedure"). His conclusion, that an Article 78 proceeding would have been an ineffective remedy, however, is mistaken.

■ "[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of his claim]," and may obtain a trial "where a triable issue of fact is raised." *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 202 (2d Cir.1996). Moreover, pursuant to Article 78 and § 76 of the Civil Service Law, a court may order reinstatement, award back pay, modify the punishment or remand for a new hearing. *Anderson v. Dolce*, 653 F.Supp. 1556, 1564 (S.D.N.Y.1987) (citing N.Y. Civ. Serv. Law § 77). It may also decide issues of constitutional law. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996) (citing *Christ the King Reg. High Sch. v. Culvert*, 815 F.2d 219, 224–25 (2d Cir.1987)); *see also* N.Y. CPLR § 7803(3) (providing for judicial review of administrative agency error, including "error[s] of law" and "abuse[s] of discretion").

Plaintiff cannot state a claim under § 1983 because he has not shown that the full panoply of procedures provided by New York state are inadequate. *Marino*, 837 F.2d at 47. Instead, he has simply focused on an alleged deficiency in one stage, while "ignoring those 'safeguards and remedies' that are built into the whole." *Ludd v. Rockville Centre Union Free School Dist.*, No. 86 Civ. 2413, 1990 WL 137388, at *4 (E.D.N.Y. Sept.17, 1990); *see also Kriegsman v. New York City Transit Authority*, No 88 Civ. 0769, 1988 WL 138273, at *5 (E.D.N.Y. Dec.16, 1988) ("disciplinary proceedings must be considered in their entirety"); *Liotta v. Rent Guidelines Bd. for the City of New York*, 547 F.Supp. 800, 802 (S.D.N.Y.1982) (WCC) ("Plaintiff[ ] cannot manufacture a § 1983 claim by pointing to the allegedly defective [hearing] while ignoring that part of the regulatory process that serves to redress administrative error .... [I]n considering whether defendants have failed to afford plaintiff[ ] due process ... the Court evaluates the entire procedure."). Had

plaintiff brought an Article 78 proceeding, he would have been afforded all of the process that he was due under the Constitution, *see, e.g., Clavin v. Post*, 992 F.Supp. 359, 362 (S.D.N.Y.1998); *Federico*, 955 F.Supp. at 202, and an opportunity to compel the Board to comply with any procedures required under state law, *see Ludd*, 1990 WL 137388, at *3. He cannot now cure the expiration of that article's four-month statute of limitations by bringing an action in federal court. *See Hellenic*, 101 F.3d at 881; *see also Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984) ("Where, as here, Article 78 gave ... a meaningful opportunity to challenge [the dismissal] ..., plaintiff was not deprived of due process simply because he failed to avail himself of the opportunity."); *Liotta*, 547 F.Supp. at 802 ("Plaintiff[ ] cannot complain that due process has been denied ... when [he has] rejected the state procedure that is available to [him] for correcting the alleged procedural deficiency."). Plaintiff does nothing to explain why such proceeding would have been inadequate with respect to the procedures implemented at the hearings, other than to state that he has alleged a violation of "established state procedure." Such a conclusory assertion is insufficient to state a claim under § 1983.

■ There is a second, independent reason to dismiss plaintiff's claim that he was denied procedural due process. Plaintiff was in fact provided with pre-termination hearings that complied with due process requirements, receiving most, if not all, of the safeguards which would have been afforded to him by full adversarial proceedings, including notice of the charges against him, time to prepare a defense, representation by counsel, a right of confrontation and cross-examination, application of the rules of evidence and the opportunity for legal argument. *Cf. Loudermill*, 470 U.S. at 545, 105 S.Ct. 1487 ("full evidentiary hearing" not required); *Nicolosi v. New York City Transit Authority*, No. 88 Civ. 0581, 1989 WL 69896, at *3 (E.D.N.Y. June 19, 1989) ("notice of charges ..., explanation of evidence ..., and an opportunity to present his case as evidenced by the more than 350–page transcript which resulted" held sufficient to comply with due

process). We note that the "entire [pre-termination] proceeding was transcribed and all exhibits [were] available for inspection and viewing. The [f]indings [of fact] were specific as to each charge and [a] vote taken [that] identif[ied] the [Board] members by signature. When the record is [ ] viewed as a whole it is apparent that th[e] ... decision was accomplished with sufficient specificity and notice so as to advise [p]laintiff of the nature of the proceedings and the basis for the Board's decision." Def. Nanna's Mem. of Law at 8. Plaintiff's argument that the procedural aspects of the hearings were defective is therefore unavailing. Defendants' failure to make factual findings on the record or to provide plaintiff with detailed reasons for his termination or suspension, if cognizable under state law, simply does not rise to the level of a constitutional violation.

Plaintiff's other due process claim, that he cannot now seek effective relief in state court with respect to defendants' alleged bias, because he only recently learned the extent of that bias, is also unavailing. One of the purposes of Article 78 is to provide a mechanism for fair and impartial post-termination review. *See, e.g., In the Matter of Miller v. McMahon,* 240 A.D.2d 806, 808, 658 N.Y.S.2d 512, 514 (3d Dep't 1997); *In Matter of Wood v. Cosgrove,* 237 A.D.2d 616, 617, 655 N.Y.S.2d 1004, 1004 (2d Dep't 1997). By seeking a timely, independent review of the Board's determination, plaintiff could have assured that he had not been pre-judged nor terminated for inappropriate reasons.[5] Accordingly, we must dismiss this second claim as well. *Accord Whiting v. Village of Old Brookville,* 8 F.Supp.2d 202, 205–06, No. 96 Civ. 3442, 1998 WL 324123, at *3 (E.D.N.Y. June 17, 1998) (dismissing § 1983 claim attacking impartiality and selection of hearing officer; "availability of Article 78 review preclud[ed]" possibility

that plaintiff's due process rights had been violated).

### Conclusion

For the foregoing reasons, plaintiff's motion for a partial summary judgment, ruling that defendants violated his due process rights, and seeking sanctions against defendants Woehrle and Fanelli, is denied and defendants' cross-motions for partial summary judgment are granted. Claims 1(c) and 3 in Verri II, 96 Civ. 3158(WCC) and Claims 1, 2, 3 and 5 in Verri IV, 98 Civ. 0477, to the extent that those claims allege a violation of the Due Process Clause of the Fourteenth Amendment, are hereby dismissed.

Plaintiff is granted leave to amend the Complaints in Verri II and IV within twenty (20) days in accordance with note 2 of this Opinion.

SO ORDERED.

---

5. Moreover, due process does not require that the plaintiff be provided with an impartial pre-termination hearing. *McDaniels v. Flick,* 59 F.3d 446, 459 (3d Cir.1995), *cert. denied,* 516 U.S. 1146, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996); *see also Walker v. City of Berkeley,* 951 F.2d 182, 184 (9th Cir.1991) ("failure to provide an impartial decisionmaker at the pretermination stage, in itself, does not create liability, so long as the decisionmaker at the post-termi-

nation hearing is impartial"); *Schaper v. City of Huntsville,* 813 F.2d 709, 715–16 (5th Cir.1987) ("due process [does not] require the state to provide an impartial decisionmaker at the pretermination hearing. The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations' ") (quoting *Parratt,* 451 U.S. at 543, 101 S.Ct. 1908).